[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 259.]

IN RE RIDDLE, ALLEGED NEGLECTED/DEPENDENT CHILD.

[Cite as *In re Riddle*, 1997-Ohio-391.]

*Juvenile court—Determining whether a child is neglected under former R.C. 2151.03(A)(2)—Child who is receiving proper care pursuant to an arrangement initiated by the parent with a caregiver is not a dependent child under R.C. 2151.04(A)—Trial court's finding of neglect not against the manifest weight of the evidence, when.*

(No. 96-1304—Submitted April 15, 1997—Decided July 23, 1997.)

CERTIFIED by the Court of Appeals for Guernsey County, No. 96CA03.

———————————

{¶ 1} Travis Riddle, Sr. and appellant, Angela Hannon, were divorced in May 1994. Pursuant to the divorce, custody of the couple's son, Travis Riddle, Jr. (born August 18, 1993), was assigned to Travis Riddle, Sr.

{¶ 2} On July 12, 1995, appellee, Guernsey County Children Services Board ("GCCSB"), received a complaint that Travis, Jr. was not receiving proper care due to his parents' transient lifestyles. This complaint alleged that Travis, Jr. was staying with different people in different locations, and that stability in Travis, Jr.'s care was lacking. At about the time appellee became involved, Travis, Sr., who had recently lost his job, acknowledged that he was not providing proper care for Travis, Jr.

{¶ 3} Travis, Jr.'s paternal grandparents, Jeff and Christy Riddle, were among the various caregivers the child had stayed with prior to appellee's involvement. Jeff and Christy Riddle expressed concerns about the well-being of their grandson, and about the ability of either parent to provide regular, stable care. In response to the situation, a GCCSB caseworker mediated an agreement to address Travis, Jr.'s care. Signatories to this agreement or "contract" were

appellant, Travis Riddle, Sr., Jeff Riddle, Christy Riddle, and the caseworker.  The contract was signed on July 26 and 27, 1995.

{¶ 4} The contract outlined two aspects of the parents' problems regarding Travis, Jr.:  that neither parent had permanent appropriate housing and that the custodial parent, Travis, Sr., had been unable to provide a stable environment.  As a desired solution, the contract specified that the goal was to provide Travis, Jr. with a permanent stable environment.  The contract recognized that the paternal grandparents' home provided a stable environment on a temporary basis without court intervention.

{¶ 5} The contract set out "conditions" to be complied with to achieve the goal of providing Travis, Jr. with a permanent stable environment.  The first condition was that Travis, Jr. would reside with his paternal grandparents until Travis, Sr. found suitable housing and achieved a source of income that would provide for his son's basic needs.  Other conditions addressed Aid to Dependent Children benefits for Travis, Jr., the child's medical care, and parental visitation.  The final condition specified that "Travis Riddle [Sr.] will accomplish his goals on or before September 10, 1995.  If he is unable, Guernsey County Children Services Board will assist the paternal grandparents in receiving temporary legal custody of their grandchild to ensure his ongoing stability."[1]

{¶ 6} As the contract was structured, Travis, Sr., as the custodial parent, was challenged to modify his situation with a goal of establishing a more stable environment for the child's welfare.  Travis, Sr. was given approximately forty-five days to display his commitment to the contract's goals.  The contract placed no similar responsibilities upon appellant to improve her situation.

---

1. A copy of the contract can be found in the appendix to appellee's brief, along with a copy of the complaint filed in juvenile court.  The contract is not found in the record, although the complaint, found in the record, references the contract as an attachment.  Also, the copy of the contract in the appendix is clearly stamped "FILED" at the top and is dated the same as the complaint.  Moreover, the caseworker's testimony about the contract corroborates its terms.

**{¶ 7}** Upon the expiration of the contract period, the caseworker determined that very little, if any, progress had been made by Travis, Sr. to meet the contract's goals. On September 20, 1995, the caseworker filed a complaint in Guernsey County Juvenile Court, alleging that Travis, Jr. appeared to be a neglected/dependent child pursuant to R.C. 2151.03(A)(2) and 2151.04(A), and requested that the court inquire into the status of the child. The complaint explained that the conditions of the contract had not been met, and asked for assignment of temporary legal custody to the paternal grandparents.

**{¶ 8}** On September 26, 1995, the court appointed attorneys to represent each of the parents, appointed a guardian *ad litem* for the child, found probable cause to believe that Travis, Jr. was a neglected/dependent child, and awarded interim custody to the paternal grandparents, with protective supervision by appellee.

**{¶ 9}** On November 20, 1995, the court approved appellee's case plan for Travis, Jr.'s care, which specified that the child's parents would each obtain appropriate housing and income, that the paternal grandparents would meet the child's daily needs, and that appellant and Travis, Sr. would each visit weekly with their son.

**{¶ 10}** The trial court held an adjudicatory hearing on December 18, 1995. Several individuals testified at the hearing that Travis, Jr. had not been receiving proper care prior to the time his paternal grandparents assumed responsibility for his care. Appellant apparently was unable to care for Travis, Jr. on a consistent basis, and therefore was unable to seek custody of the child. Further unrefuted testimony established that Travis, Jr. was well cared for after the paternal grandparents assumed their responsibilities for him.

**{¶ 11}** After the presentation of testimony, the trial court determined that Travis, Jr. was a neglected child, and the case proceeded to the dispositional hearing. After the dispositional hearing, the trial court journalized its decision

finding Travis, Jr. to be a neglected child, assigned temporary custody to the paternal grandparents, and established a parental visitation schedule.

{¶ 12} Appellant appealed from the trial court determination that Travis, Jr. was a neglected child. The court of appeals affirmed the judgment of the trial court, and certified its judgment as in conflict with the decisions of the Court of Appeals for Franklin County in *In re Reese* (1982), 4 Ohio App.3d 59, 4 OBR 109, 446 N.E.2d 482, *In re Crisp* (Feb. 5, 1981), Franklin App. No. 80AP-678, unreported, 1981 WL 2983, and *In re Darst* (1963), 117 Ohio App. 374, 24 O.O.2d 144, 192 N.E.2d 287. The certified question is, "Can a trial court make a finding of neglect under R.C. 2151.03(A) if the child is being properly cared for by a relative who has not been declared legal guardian or custodian as those terms are defined in R.C. 2151.011[B](18) and R.C. 2151.011[B](26), respectively?"

{¶ 13} The cause is now before this court upon our determination that a conflict exists.

————————————

*Charles E. McKnight*, for appellant.

*Josephine E. Hayes,* Guernsey County Assistant Prosecuting Attorney, for appellee.

————————————

**ALICE ROBIE RESNICK, J.**

{¶ 14} The court of appeals' certification order invites this court to consider whether a juvenile court, as a matter of law, is foreclosed from entering a finding of neglect when it is uncontroverted that the allegedly neglected child is receiving proper care from a relative both at the time of the filing of the complaint and at the time of the adjudicatory hearing.[2] For the reasons which follow, we distinguish the

—————————————————

2. Appellate courts appear to be divided over whether neglect or dependency must exist only at the time of the filing of the complaint or also at the time of the adjudicatory hearing in order for juvenile court jurisdiction to attach. See Kurtz & Giannelli, Ohio Juvenile Law (1996-1997 Ed.) 39, Section

factual scenario of this case from that in the cases certified as conflicting with the court of appeals' decision. We affirm the judgment of the court of appeals, while at the same time generally approving of the rationales behind the decisions reached in the certified conflict cases.

{¶ 15} We do not approach this case by expressly focusing on the certified question, but instead examine the circumstances leading to the trial court's finding of neglect to inquire whether the trial court's decision was against the manifest weight of the evidence. To determine that Travis, Jr. was a neglected child under former R.C. 2151.03(A)(2), the trial court was required to find that the essential statutory elements were proven by clear and convincing evidence. See R.C. 2151.35(A) and Juv.R. 29(E)(4).

{¶ 16} Our inquiry is guided by R.C. 2151.01, which sets out the purposes of R.C. Chapter 2151 relevant here:

"(A) To provide for the care, protection, and mental and physical development of children subject to Chapter 2151. of the Revised Code;

"* * *

"(C) To achieve the foregoing purposes, whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety[.]"

{¶ 17} Travis, Jr. was adjudged to be a neglected child pursuant to former R.C. 2151.03(A)(2), which defined a "neglected child" as any child "[w]ho lacks proper parental care because of the faults or habits of [the child's] parents, guardian, or custodian[.]"[3] In the complaint filed in juvenile court, he was also alleged (but was not found) to be a dependent child pursuant to former R.C. 2151.04(A), which

---

2.05; 2 Anderson's Ohio Family Law (2 Ed.1989) 297-299, Section 19.19. The issue does not arise in this case due to the circumstances here. Testimony at the adjudicatory hearing established that Travis, Jr.'s situation was unchanged between the date of the filing of the complaint and the date of the hearing.

defined a "dependent child" as any child "[w]ho is homeless or destitute or without proper care or support, through no fault of [the child's] parents, guardian, or custodian[.]"[3]

{¶ 18} For our purposes here, it is useful to recognize a distinction between an allegation under R.C. 2151.03(A)(2) that a child is neglected and an allegation under R.C. 2151.04(A) that a child is dependent. R.C. 2151.03(A)(2) requires some showing that parents, a guardian, or a custodian is at fault before a finding of a lack of proper (or adequate) care can be made. R.C. 2151.04(A), on the other hand, requires no showing of fault, but focuses exclusively on the child's situation to determine whether the child is without proper (or adequate) care or support. See *In re East* (C.P.1972), 32 Ohio Misc. 65, 61 O.O.2d 38, 288 N.E.2d 343.

{¶ 19} *Crisp* and *Darst*, two of the certified conflict decisions, were dependency cases involving allegations of a lack of proper care pursuant to R.C. 2151.04. In both cases, the Tenth Appellate District found that, if a child is receiving proper care from relatives to whom the parent had entrusted the child's care, then the child is not a dependent child under R.C. 2151.04. See *Crisp*, Franklin App. No. 80AP-678, unreported, at 4-5; *Darst*, 117 Ohio App. at 379, 24 O.O.2d at 146, 192 N.E.2d at 290-291. We approve of the rationale behind *Crisp* and *Darst*, at least insofar as R.C. 2151.04(A) is concerned. Given that fault (parental or otherwise) is not an issue in an R.C. 2151.04(A) dependency inquiry, so that the focus is exclusively on the child's situation, a child who is receiving proper care pursuant to an arrangement initiated by the parent with a caregiver is not a dependent child under R.C. 2151.04(A).[4]

---

3. R.C. 2151.03(A)(2) was amended, effective August 8, 1996, to substitute the word "adequate" for "proper," and to make the statute gender neutral. See Sub. H.B. No. 274.
4. R.C. 2151.04(A) was amended, effective August 8, 1996, to define "dependent child" as any child "[w]ho is homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian[.]" Sub. H.B. No. 274.

{¶ 20} Although a dependency case focuses on the condition or environment of the child, and not on fault, a neglect case, particularly one under R.C. 2151.03(A)(2), does require an inquiry into the "faults or habits" of the caregiver. The ultimate finding required under R.C. 2151.03(A)(2) is that the child lacks proper (or adequate) parental care due to those faults or habits. In *Reese*, the Tenth Appellate District considered whether a child is neglected when a parent temporarily, through an informal agreement, places the child with a relative. The *Reese* court cited *Crisp* and *Darst*, and determined that its reasoning in those dependency cases also applied to a neglect case. The court in *Reese* held that, if the relative was providing proper care pursuant to the informal agreement, the child could not be found to be lacking "proper parental care" under R.C. 2151.05, so that the child was not a neglected child. 4 Ohio App.3d at 62, 4 OBR at 112, 446 N.E.2d at 485. As we read *Reese*, the parent's voluntary act of temporarily placing the child with a responsible relative is an indicator of proper parental care, and does not support a finding that the parent is at fault. Therefore, the care furnished by the relative can be imputed to the parent. "In such situations, the state has no interest in assuming guardianship since the obligations of care, custody, and support are being met." Kurtz & Giannelli, Ohio Juvenile Law (1996-1997 Ed.) 42, Section 2.06(D). Just as we generally accept the reasoning behind *Darst* and *Crisp*, we also generally accept the reasoning underlying *Reese*.

{¶ 21} Nevertheless, we find that a significant factual distinction exists between the situation in the *Reese, Crisp,* and *Darst* cases and the situation in this case. In *Reese*, as in *Crisp* and *Darst*, the parent *voluntarily* arranged for the child to be placed with a relative. One of the underlying concerns in cases of this type, as set out in R.C. 2151.01(C), is that the state should intervene only when necessary because the parent-child relationship may be fundamentally altered by the state's intervention. In this case, however, the GCCSB caseworker was already involved prior to the filing of the neglect/dependency complaint in juvenile court, and it was

through the caseworker's initiative that Travis, Jr. was placed with relatives to provide stability in the child's care. It was the caseworker who mediated the "contract" which set out the terms of the initial placement with Jeff and Christy Riddle. No credit can be imputed to Travis, Sr., the custodial parent, for the paternal grandparents' provision of proper care in this situation.

{¶ 22} The court of appeals below in its opinion stated, "Just because a child is safe, whether it be in a foster home or the grandparents' home, does not negate a finding the child is neglected because of the acts or omissions of the parents." Given the facts of this case, we do not disagree with the appropriateness of this observation. Similarly, we endorse the approach of *In re Poth* (June 30, 1982), Huron App. No. H-81-31, unreported, 1982 WL 9371, in which the Sixth Appellate District, in a situation where the county assumed care of a child because the parents were not providing care, rejected an argument that the child could not be adjudged dependent as a matter of law when the child was receiving excellent foster care.

{¶ 23} The certification-of-conflict order in this case invites us to consider whether the terms "guardian" and "custodian" in R.C. 2151.03(A)(2) should be limited to the definitions of those terms in R.C. 2151.011(B)(18) and 2151.011(B)(26), respectively.[5] If we were to determine that "proper parental care" can be provided only directly by a parent, or directly by a person who has officially been designated as a "guardian" or a "custodian," then obviously a non-parent who does not fit the statutory definitions could never provide "proper parental care." It

---

5. R.C. 2151.011(B)(18) provides:

"'Guardian' means a person, association, or corporation that is granted authority by a probate court pursuant to Chapter 2111. of the Revised Code to exercise parental rights over a child to the extent provided in the court's order and subject to the residual parental rights of the child's parents."

R.C. 2151.011(B)(26) provides:

"'Custodian' means a person who has legal custody of a child or a public children services agency or private child placing agency that has permanent, temporary, or legal custody of a child."

follows from our general agreement with the *Reese* approach that we decline to resort to such a rigid construction of R.C. 2151.03(A)(2).

**{¶ 24}** As one of her major arguments, appellant suggests that this case is at heart a custody dispute, and that a neglect/dependency action should not be used as a substitute for a custody proceeding. In *Reese*, 4 Ohio App.3d at 62, 4 OBR at 112, 446 N.E.2d at 485, the court cautioned that "[t]he statutory scheme * * * was not intended by the General Assembly for use as a tool by persons seeking custody of a child who has been temporarily entrusted to their care by a parent when the parent then requests the return of the child. See *In re Kronjaeger* (1957), 166 Ohio St. 172 [1 O.O.2d 459, 140 N.E.2d 773] * * *. * * * [W]here the primary objective of the complainant in filing a complaint under R.C. 2151.27 is to obtain custody, there appears to be a tendency to confuse the issues which are determinative of selecting a proper custodian — suitability of prospective custodians and the best interests of the child — with the issues which are determinative of a finding that the child is a neglected child."

**{¶ 25}** The requirement that the trial court hold bifurcated hearings in cases such as this helps to direct the focus of the initial inquiry into whether a child is neglected or dependent (the allegations in this case) away from the custody issue. See *In re Baby Girl Baxter* (1985), 17 Ohio St.3d 229, 17 OBR 469, 479 N.E.2d 257, paragraph one of the syllabus (construing and applying R.C. 2151.35 and Juv.R. 29 and 34). At the adjudicatory hearing, the trial court considers whether the child is a neglected or dependent child. As mentioned above, the fault of the parent, guardian, or custodian is relevant to a neglect adjudication under R.C. 2151.03(A)(2). However, the overall issue to be decided at such an adjudicatory hearing is whether the child is a neglected child. A dispositional hearing is held only if the trial court *first* determines that the child is a neglected child.

**{¶ 26}** We share the *Reese* court's concern that a neglect/dependency complaint should not be filed as a substitute for a custody action. However, given

the facts of this case, we do not view it as essentially a custody dispute. This situation differs from that in *Reese*, in which the relative entrusted by the parent to care for the child attempted to use a neglect complaint as the vehicle to gain custody. Here, we view the portion of the complaint requesting that temporary custody of Travis, Jr. be assigned to the paternal grandparents as incidental to the neglect/dependency action. See R.C. 2151.27(C). We accept appellee's stated contention that the goal behind filing the neglect/dependency complaint was to provide a stable environment for the child, and that it was not to wrest custody of Travis, Jr. from the custodial parent.

{¶ 27} Appellant also suggests that the contract basically operated as an acquiescence that Travis, Jr. was neglected or dependent if its conditions were not met. Our review of the record convinces us that the trial court did not find Travis, Jr. to be a neglected child as a *fait accompli* solely on the basis of Travis, Sr.'s failure to meet the contractual conditions. The trial court did not approach this case as some hybrid-type of breach of contract/neglect action. Although Travis, Sr.'s failure to meet the contractual conditions was a factor in the trial court's consideration, the trial court had before it other relevant evidence as well, and the adjudicatory hearing did not unduly dwell on the agreement. The hearing properly focused on the situations of all concerned, and the resulting necessity for the agreement and its conditions.

{¶ 28} In conclusion, because the paternal grandparents were caring for Travis, Jr. pursuant to an agreement initiated by the caseworker, rather than pursuant to a voluntary informal agreement initiated by the child's parent, we distinguish this case from *Reese*. In addition, we find that this case is distinguishable from *Crisp* and *Darst* as well for the same reason. Although we believe that the evidence may have supported an adjudication that Travis, Jr. was a dependent child, we cannot say that the trial court decision that Travis, Jr. was a neglected child was against the manifest weight of the evidence. If the trial court

believed that Travis, Jr.'s lack of proper care was due to circumstances within Travis, Sr.'s control, then a finding of fault would not be inappropriate. See *In re Tikyra A.* (1995), 103 Ohio App.3d 452, 659 N.E.2d 867.

{¶ 29} Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

––––––––––––––––––