OPINION
Jacqueline Williams challenges the order of Cuyahoga County Juvenile Court Judge John W. Gallagher granting permanent custody of her child, Tyrene Williams, to the Cuyahoga County Department of Children and Family Services (CCDCFS). Williams argues that her parental rights were terminated without a proper bifurcation of the adjudicatory and dispositional hearings required by R.C.2151.35 (B) (1), and that CCDCFS did not meet its burden of proof on its attempts to reunify Tyrene with Williams pursuant to R.C.2151.419 and R.C. 2151.414 (E) (1).
CCDCFS maintains that a bifurcation of the adjudicatory and dispositional hearings was not necessary because Williams and her attorney waived that right at trial, and that CCDCFS made all attempts necessary to reunify the child and the mother, but due to Williams' substance abuse and lack of commitment to pursue professional help, such placement was impossible under the provisions of R.C. 2151.414 (E). For the following reasons, we affirm.
On March 22, 1998, Tyrene Williams, exposed to cocaine and with a seizure disorder, was born to Jacqueline Williams. The father has not been identified. CCDCFS removed the child from her custody on March 23, 1998, and on March 25, 1998, filed a motion alleging the child to be neglected and requesting permanent custody. An ex parte hearing on its motion for temporary custody held on March 31, 1998, resulted in the child being placed in a foster home with people trained to address her special needs.
Kimberly Mitchell, a social worker from CCDCFS who testified at the June 9, 1998, permanent custody hearing, had worked with Williams since 1996 to overcome Williams' drug addiction. Mitchell stated that because of Williams' substance abuse, and her inability or unwillingness to seek help for this problem, CCDCFS had previously removed five children from her care. Three of these children had been placed in the permanent custody of the CCDCFS in 1998, and the other two were in the legal custody of relatives.
Mitchell mentioned that her main goal was to assist Williams, who had been diagnosed as cocaine dependant in February 1996, in her attempts to overcome that addiction. To that end, Mitchell developed and attempted to implement case plans to assist Williams. The latest case plan, developed in July 1997, consisted of parental education, drug treatment, and verifying that Williams secured stable and appropriate housing for the rearing of her children.
Williams first entered drug treatment on February 29, 1996, and remained involved in that program, at least intermittently, until March 20, 1996, when she was dismissed for lack of attendance. The CCDCFS attempted on two other occasions, in October 1996, and January 1997, to refer Williams to treatment programs, but each time she was dismissed for a failing to attend. It was not until December 1998, nearly two years alter her initial diagnosis, that Williams finally completed a substance abuse program at the Hitchcock Center for Women.
This treatment, however, was not successful because Williams, while pregnant with Tyrene, on February 17, 1998, tested positive for the presence of cocaine. She again tested positive for cocaine just prior to the child's birth. Williams attempted to blame these relapses on her ongoing struggle to keep her children and her struggles through the courts with the CCDCFS.
After this relapse, Williams informed Mitchell that she was not going to re-enter any of the treatment programs recommended by CCDCFS. At the hearing Williams admitted that she was not in treatment, and was not attending any of the twelve-step self help programs made available to her. She stated that she believed she was a victim of drugs, and that Tyrene should be returned to her custody because she had never abused any of her children. Her only fault, she claimed, was that she smoked drugs. It was also revealed at the permanent custody hearing that Williams had not secured stable housing and, in fact, for the past six months, had moved from place to place living with friends as she continued her search.
Mitchell testified that Williams's cocaine use during her pregnancy resulted in Tyrene being born with a seizure disorder and the child must take medication to control these seizures. Since April of 1998, Tyrene has been placed in a foster home and had developed a special bond with the foster parents who were willing to adopt her. Mitchell further stated that based upon her observations and her courses of dealing with Williams, that Williams would be unable to meet the demands of Tyrene's special needs.
On June 16, 1998 Judge Gallagher determined Tyrene to be both neglected and dependant, and granted the motion for permanent custody. This appeal followed.
Williams first assignment of error reads:
 I. WHETHER THE JUVENILE COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO FOLLOW PROCEDURE AND HOLD BIFURCATED ADJUDICATORY AND DISPOSITIONAL HEARINGS AS REQUIRED BY THE OHIO REVISED CODE, JUVENILE PROCEDURE AND OHIO CASE LAW.
Williams contends that R.C. 2151.35 (B) (1) mandates separate adjudicatory and dispositional hearings on a permanent custody motion, and submits, by operation of law, these two hearings may not be combined.
R.C. 2151.35 provides in pertinent part:
 (B) (1) If the court at an adjudicatory hearing determines that a child is an abused, neglected, or dependent child, the court shall not issue a dispositional order until after the court holds a separate dispositional hearing. The court may hold the dispositional hearing for an adjudicated abused, neglected, or dependent child immediately after the adjudicatory hearing if all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing. The dispositional hearing may not be held more than thirty days after the adjudicatory hearing is held. The court, upon the request of any party or the guardian ad litem of the child, may continue a dispositional hearing for a reasonable time not to exceed the time limits set forth in this division to enable a party to obtain or consult counsel.
Juv.R. 29 provides in pertinent part:
 (F) Procedure upon determination of the issues: Upon the determination of the issues, the court shall do one of the following:
 (1) If the allegations of the complaint were not proved dismiss the complaint;
 (2) If the allegations of the complaint are admitted or approved, do one of the following:
 (a) Enter an adjudication and proceed forthwith to disposition;
 (b) Enter an adjudication and continue the matter for disposition for not more than six months and make temporary orders;
 (c) Postpone entry of adjudication for not more than six months;
 (d) Dismiss the complaint if dismissal is in the best interests of the child and the community.
Further, when parental rights are subject to termination, "both the Juvenile Rules and the Revised Code prescribe that such proceedings be bifurcated into separate adjudicatory and dispositional hearings." Littlejohn v. Cuyahoga County Dept. ofChildren and Family Services (May 7, 1998), Cuyahoga App. Nos. 71354, 71355, 71356, unreported, citing, In Re Baby Girl Baxter
(1985), 17 Ohio St.3d 229, 479 N.E.2d 257, paragraph one of the syllabus. Although bifurcation is required where permanent custody is sought at the initial disposition, In re Brofford
(1992), 83 Ohio App.3d 869, 615 N.E.2d 1120, "a dispositional hearing is to be held only if the trial court first determines that the child is a neglected, abused, or dependant child."Littlejohn, supra, citing, In re Riddle (1997), 79 Ohio St.3d 259,680 N.E.2d 1227. Only at that hearing does the judge become vested with the authority to make a disposition pursuant to R.C.2151.353. Littlejohn, supra.
It is clear, however, that a judge may hold a dispositional hearing immediately following an adjudicatory hearing "if all parties were served prior to the adjudicatory hearing with all the documents required for the dispositional hearing." R.C.2151.35 (B) (1). See, also, In the Matter of Leos. (Jan. 26, 1998), Stark App. No. 96 CA 00389, unreported. Further, any error concerning bifurcation is waived when the complaining party's lawyer fails to object to the judge's procedure. In the Matteroff Lannom (Dec. 12, 1997), Clark App. No. 96-CA-64, unreported, citing, In re Pieper Children (1993), 85 Ohio App.3d 318, 328,619 N.E.2d 1059.
In the case sub judice the following colloquy took place at the conclusion of the adjudicatory hearing:
 THE JUDGE: Next witness on behalf of the mother, Mr. Hyland?
MR. HYLAND: No one further, Your Honor.
THE JUDGE: So you rest? Any rebuttal testimony?
MR. AUDI: No, Your Honor.
 THE JUDGE: No objection that we move right to disposition?
MR. (UNIDENTIFIED): No objection, Your Honor.
 THE JUDGE: All right. Mr. Granito is the GAL in a position to make some kind of a report and recommendation.
It is clear from this exchange that each party was aware that the judge was proceeding directly into the dispositional hearing, and regardless of who the unidentified speaker may have been, each attorney was put on notice of the nature of the proceedings, and as a result had an opportunity to object. Accordingly, since neither attorney objected to the judge combining the adjudicatory and dispositional hearings, any claimed error concerning bifurcation under R.C. 2151.35 (B) (1) was waived. Further, Williams failed to present evidence that any documents required for the dispositional hearing were not presented to her prior to the adjudicatory hearing.
Williams first assignment of error is not well taken.
The second assignment of error states:
 II. WHETHER THE CUYAHOGA DEPARTMENT OF CHILDREN AND FAMILY SERVICES FAILED TO CARRY ITS BURDEN OF PROOF REGARDING REASONABLE EFFORTS AT REUNIFICATION, AND AS SUCH, WHETHER THE COURT'S DECISION IS UNSUPPORTED BY THE RECORD.
Here Williams asserts that her right to raise her child is an essential and basic civil right, that CCDCFS made no attempt to reunify her with her child pursuant to R.C. 2151.419 (A), and also failed to help her remedy the problems, as required by R. C.2151.414 (E) (1), which led to Tyrene's removal from her care.
R.C. 2151.419 provides in pertinent part:
 (A) (1) Except as provided in division (A) (2) of this section, at any hearing held pursuant to section 2151.28 or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts. In determining whether reasonable efforts were made, the child's health and safety shall be paramount.
R.C. 2151.414 provides in pertinent part:
 (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A) (4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A) (4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
A reviewing court will not overturn an order for permanent custody unless it finds the judge acted in a manner which was arbitrary, unreasonable, or capricious. In re Levetta Gabriel
(Feb. 26, 1998), Cuyahoga App. No. 72374, unreported. As in this case, once clear and convincing evidence is presented at the adjudication hearing that the child is a dependant child, an adjudication of dependency may be entered and the judge may proceed to disposition. In re Matthew Vinci (Sept. 3, 1998), Cuyahoga App. No. 73043, unreported. The judge may then grant permanent custody at the dispositional hearing if he determines by clear and convincing evidence, in accordance with R.C.2151.414 (E), "that the child cannot be placed with either parent within a reasonable time, or should not be placed with either parent, and if it determines, in accordance with 2151.414 (D), that permanent commitment is in the best interest of the child. R.C. 2151.353 (A) (4)." In re Vinci, supra. Clear and convincing evidence is defined as "that measure or degree of proof which is more than a mere `preponderance of the evidence' but not to the extent of such certainty as is required "beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts to be established." In re Awkal (1994), 95 Ohio App.3d 309, 315,642 N.E.2d 424.
Prior to seeking permanent custody an agency must make a good faith effort to implement a reunification plan. In re Angel Grant
(Mar. 12, 1993), Cuyahoga App. No. 71046, unreported. A good faith effort has been determined to be "an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." In re Weaver (1992), 79 Ohio App.3d 59,606 N.E.2d 1011. See, also, In re Grant, supra.
In the instant case, it is clear that the CCDCFS made a good faith effort, though unsuccessful, to assist Williams with her drug problems. The case plan of July 1997, designed to reunify her with her then five children, was still in effect at the time of the Tyrene's birth. Williams is correct in claiming that CCDCFS made no specific effort or case plan to reunify her with her with Tyrene, but she overlooks the undisputed fact that she made no attempt to complete drug treatment, maintain sobriety, or maintain stable housing before or after the child's birth. Williams relinquished her opportunity to obtain reunification with her older children though given many opportunities. Issuing a new plan to include Tyrene would only mirror the unsuccessful July 1997 model and could disregard the best interests of the child. It has been held that R.C. 2151.419 (A) may have an implied exception where the continuous conduct of the parent renders additional efforts by CCDCFS futile. In re Efaw (Apr. 21, 1998), Athens App. No. 97CA49, unreported. However, CCDCFS must be careful not to aid the appearance of futility through its acts or omissions, or by ignoring the natural parent. Id.
Williams clearly showed an inability to provide a suitable stable home. She has shown an inability to maintain stable housing because she has drifted from house to house without establishing a permanent residence for the last three years. She has shown an inability to complete the case plans formulated by the CCDCFS that would have enabled her to be reunified with any one of her other five children. She consistently missed her drug abuse counseling, and to the date of the hearing failed to take responsibility for the abuse, or show a desire to remedy that problem. It is clear that although Tyrene is not abandoned or orphaned, the longstanding drug related dependency problems, coupled with a lack of stable, suitable housing, point to an inability to provide Tyrene with a home environment that would be in her best interests.
A neglected child is any child who lacks the proper parental care due to the habits or faults of her parent(s). R.C. 2151.03
(A) (2). It is clear that Tyrene could not be placed with Williams within a reasonable period of time and, under R.C.2151.414 (E), Williams demonstrated a lack of commitment toward her child.
Consequently, the judge did not act in an unreasonable or unconscionable manner in granting CCDCFS permanent custody, and as a result, this assignment of error lacks merit.
Judgment affirmed.
It is ordered that the appellee recover from appellant its costs herein taxed.
This court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Court Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., CONCURS SEPARATELY; JAMES D.SWEENEY, J., CONCURRING IN JUDGMENT ONLY WITH SEPARATECONCURRING OPINION.
 _________________________________ ANNE L. KILBANE JUDGE