DECISION AND JOURNAL ENTRY
Appellant, Terri Boso, appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, adjudging her two children to be dependent pursuant to R.C. 2151.04. We affirm.
 I.
Ms. Boso is the mother of Rachel and Peter Lewis, born April 5, 1990 and November 16, 1987 respectively. On July 12, 1999, Summit County Children Services Board ("CSB") filed an affidavit alleging that Peter and Rachel Lewis were neglected and dependent children and requesting emergency temporary custody. The basis for the complaint was that the children were taken to CSB by their maternal grandfather, who was unable to care for them after their mother was taken to the hospital by paramedics for a suspected drug overdose on pain medication. The court granted an ex parte order of emergency temporary custody on July 12, 1999. After the shelter hearing on July 13, 1999, the magistrate ordered that the children remain in the emergency temporary custody of CSB, and the children were placed in foster care.
A hearing was held before a magistrate on October 6 and 7, 1999 to determine whether the Lewis children were neglected and dependent, pursuant to R.C. 2151.03 and 2151.04 respectively. At the hearing, Ms. Boso moved for a directed verdict as to the neglect and dependency allegations, and the magistrate dismissed the allegation of neglect. In an order journalized on November 8, 1999, the magistrate adjudicated the Lewis children dependent, stating:
 The Magistrate finds that the allegation of dependency has been proven, due to the fact that because mother was hospitalized, and because the grandfather was no longer able or willing to take care of the children, for some period of time, however brief, the children had no place to go. For this reason the Magistrate finds that Peter and Rachel Lewis are dependent children.
Subsequently, Ms. Boso filed objections to the magistrate's decision and requested that she be allowed to supplement her objections after receipt of the transcript. On March 13, 2000, over two months after receiving the hearing transcript, the juvenile court entered an order overruling Ms. Boso's objections and adopting the magistrate's decision. Two days after the juvenile court's decision was journalized, Ms. Boso filed an amended brief supplementing her objections based on the hearing transcript; however, the juvenile court refused to consider the amended brief, finding it to be untimely. This appeal followed.[1]
 II.
Ms. Boso asserts six assignments of error. We will discuss each in due course, consolidating the first and fourth assignments of error as they contain similar issues of law and fact.
 A. First Assignment of Error THE LOWER COURT ERRED IN FINDING THAT THE CHILDREN WERE "DEPENDENT", [sic] AND THAT A MOMENTARY "HOWEVER BRIEF" ACT OF DEPENDENCY IS SUFFICIENT FOR SUCH FINDING AND SO TO REMOVE THE CHILDREN FROM THE CARE OF THEIR PARENTS. HENCE, THE COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, CONTRARY TO LAW, AND AGAINST THE CONSTITUTIONAL RIGHTS OF APPELLANT AS NATURAL MOTHER.
 Fourth Assignment of Error THE COURT ERRED IN NOT GRANTING A DIRECTED VERDICT AT THE END OF THE STATE'S CASE OR APPELLANT'S CASE.
In her first and fourth assignments of error, Ms. Boso argues that the juvenile court erred in adjudicating her children dependent and granting CSB temporary custody because prior to CSB's involvement, she had voluntarily made arrangements for the care of her children with her brother, Tad Greene. Therefore, she asserts that the juvenile court's determination of dependency was against the manifest weight of the evidence and that the court erred in not granting a directed verdict as to the dependency allegation in her favor. We disagree.
A finding of dependency must be supported by clear and convincing evidence. R.C. 2151.35(A). Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'" In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
The term "dependent child" is defined in R.C. 2151.04 and includes any child:
 (A) Who is homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian;
 (B) Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian;
 (C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;
(D) To whom both of the following apply:
 (1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
 (2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.
In addition, the determination that a child is dependent requires no showing of fault on the parent's part, but rather focuses solely upon "the child's situation to determine whether the child is without proper (or adequate) care or support." In re Riddle (1997), 79 Ohio St.3d 259,262. When a child is receiving proper care pursuant to an arrangementinitiated by the parent with a caregiver, the child is not a dependentchild under R.C. 2151.04(A). Id. at 263.
At the hearing, Ms. Boso explained that she, her children, and her boyfriend (Jeff Livingston) voluntarily left[2] her former home in the Twinsburg/Hudson area and decided to go camping for approximately two weeks, while they waited for their new home to become ready. On or about July 9, 1999, while they were camping, Mr. Livingston unexpectedly told Ms. Boso that he was ending their relationship, packed up his belongings, and left the campsite. Ms. Boso and her two children spent the next night at the home of Jeff Livingston's mother, Jocelyn Livingston. On July 11, 1999, Ms. Boso took her children to her father's home, so that she could speak with Mr. Livingston alone. Nothing got resolved as a result of the conversation.
Ms. Boso testified that she was extremely tired as she had gotten very little sleep over the past week, having worked nights and prepared for the move. She testified that she was unhappy and needed to sleep, so to relax, she took her boyfriend's prescription painkillers/muscle relaxers a few pills at a time, washing the last ones down with beer. She testified that she kept taking the medication because the first pills did not take effect, so she thought her Krohn's disease was preventing the drugs from being absorbed.
She related that at one point, she called her father to make sure that her children were alright. Upon learning that her father could not care for them the next morning because he had to work, she planned to pick them up and bring them to Ms. Livingston's house. However, Ms. Livingston wanted to discuss the events of the week with Ms. Boso prior to the children's arrival. The conversation caused Ms. Boso to become increasingly upset, and apparently, the drugs had also begun to take effect. Thereafter, Ms. Livingston called Ms. Boso's father and asked him to come over, ostensibly to provide emotional support for Ms. Boso. She also hid Ms. Boso's car keys to prevent her from driving.
When Ms. Boso's father and brothers arrived, Ms. Boso became further agitated. Ms. Boso's brother, Tad Greene, testified that Ms. Boso was not herself and that he called the police because he was concerned about her attempting to drive. He testified that Ms. Boso had indicated that she wanted to pick up her children, take them to CSB, and then kill herself. Similarly, Officer Thomas C. Moser of the City of Tallmadge Police Department testified that when he arrived at the Livingston residence, Ms. Boso appeared intoxicated and admitted to taking several pills. He stated that Ms. Boso had indicated to him that she wanted to go to sleep and never wake up, which he interpreted as an implied suicide threat. Consequently, Officer Moser summoned an ambulance to take Ms. Boso to the hospital. Eventually, Ms. Boso reluctantly went to the hospital. Ms. Boso denied ever being suicidal.
At the time of the incident, Ms. Boso's children were still at her father's home. Amy Vierheller, a caseworker for Summit County CSB, testified that CSB received a referral alleging that Ms. Boso was trying to get in her car and had overdosed on some painkillers. The children's grandfather brought the children to CSB on the morning of July 12, 1999 and indicated that he could no longer take care of them.[3] She further noted that at that time, no other family members came forward offering to care for them. Ms. Vierheller went to speak with Ms. Boso at the hospital on July 12, 1999 and noted that Ms. Boso's behavior was appropriate and that she was cooperative. Ms. Boso told her that she had made arrangements for her children to stay with her brother, Tad Greene, the person with whom CSB eventually placed the children. Ms. Vierheller testified that when she subsequently spoke with Mr. Greene, Mr. Greene confirmed that Ms. Boso had asked him to care for her children earlier that day and that he would be willing to care for the children.
At the hearing, witnesses testified that Ms. Boso had a loving, affectionate relationship with her children and had always provided appropriate food, shelter, and clothing for them. Further, Ms. Vierheller testified that the children wanted to see their mother and were worried about her stomach (due to the Krohn's disease).
Ms. Boso argues that the juvenile court should not have adjudicated her children dependent because she had voluntarily arranged for her children to stay with her brother, prior to CSB's involvement. In making this argument, Ms. Boso relies heavily on the Ohio Supreme Court's opinion inIn re Riddle (1997), 79 Ohio St.3d 259, in which the court stated that when a child is receiving proper care pursuant to an arrangementinitiated by the parent with a suitable caregiver, the child is not adependent child under R.C. 2151.04(A). Id. at 263. In Riddle, the paternal grandparents were temporarily caring for the child pursuant to an agreement initiated by a CSB caseworker. Id. at 259-60. This agreement provided that while the grandparents cared for the child, the father, who was the custodial parent, was to acquire suitable housing and achieve a consistent source of income during a specified time period. Id. at 260. When the father made very little progress toward achieving these goals, CSB filed a complaint in the juvenile court, alleging that the minor child was neglected and dependent. Id. From the time of the agreement to the dependency/neglect hearing, the child was receiving proper care from his grandparents. In affirming the determination of neglect, the Supreme Court found that although the child was receiving proper care from his grandparents, no credit could be imputed to the father, as the agreement for the care of the child was initiated by the caseworker and not voluntarily arranged by the father. Id. at 263.
We find that Riddle is factually distinguishable from the case at bar in that the Lewis children were not continuously receiving proper care pursuant to an arrangement initiated by Ms. Boso on July 12, 1999. Although Ms. Boso, on her own initiative, asked her brother to take care of her children on July 12, 1999, the children had been taken to CSB by their grandfather that morning. During that time, the children were not receiving care pursuant to an arrangement initiated by Ms. Boso, as CSB was providing care for the children. Therefore, we conclude that the juvenile court did not err in adjudicating Rachel and Peter dependent. As such, we hold that the juvenile court's determination of dependency was not against the manifest weight of the evidence and that the juvenile court did not err in denying Ms. Boso's motion for a directed verdict as to the allegation of dependency. Consequently, Ms. Boso's first and fourth assignments of error are overruled.
 B. Second Assignment of Error THE COURT ERRED IN NOT PREPARING FINDINGS OF FACT AND CONCLUSIONS OF LAW, DESPITE APPELLANT'S REQUEST FOR THEM.
In her second assignment of error, Ms. Boso asserts that the magistrate failed to issue findings of fact and conclusions of law upon her timely request, which was made after the magistrate had released the decision of November 8, 1999. We disagree.
Juv.R. 40(E)(2) provides in relevant part:
 If any party makes a request for findings of fact and conclusions of law under Civ.R. 52 or if findings and conclusions are otherwise required by law or by the order of reference, the magistrate's decision shall include findings of fact and conclusions of law. If the request under Civ.R. 52 is made after the magistrate's decision is filed, the magistrate shall include findings of fact and conclusions of law in an amended magistrate's decision.
Civ.R. 52 states that "[w]hen questions of fact are tried by the court without a jury, * * * [if] one of the parties in writing requests[,] * * * the court shall state in writing the conclusions of fact found separately from the conclusions of law."
"The purpose of [Civ.R. 52] is clear: to aid the appellate court in reviewing the record[.]" Werden v. Crawford (1982), 70 Ohio St.2d 122,124. If the court's ruling or decision, along with the record, states the facts and the legal conclusions of a case in a manner sufficiently clear to permit review, the substantive requirements of Civ.R. 52 have been met. See Stone v. Davis (1981), 66 Ohio St.2d 74, 85.
In the present case, we conclude that the magistrate's written opinion sufficiently sets forth the reasons for its ruling, in that it contains an extensive summary of the evidence presented during the hearing and stated the basis for the determination of dependency. Further, we find that the magistrate's opinion provided an adequate basis upon which objections to the magistrate's decision could be filed and upon which a reviewing court could render a decision. Therefore, it was unnecessary for the magistrate to issue further findings in response to Ms. Boso's request. Ms. Boso's second assignment of error is overruled.
 C. Third Assignment of Error THERE DID NOT EXIST SUFFICIENT EVIDENCE FOR THE MAGISTRATE TO PLACE THE CHILDREN IN CUSTODY OF CSB AND THUS AMOUNTED TO AN UNLAWFUL "SEIZURE" OF THE CHILDREN AGAINST THE CONSTITUTIONAL RIGHTS OF THE MOTHER.
In her third assignment of error, Ms. Boso avers that granting CSB temporary custody of her children amounted to an unlawful seizure, and therefore, violated her constitutional rights to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution. However, the juvenile court had the authority to grant CSB temporary custody of Ms. Boso's children after they were adjudicated dependent. See R.C. 2151.353(A)(2). Further, after carefully reviewing the record, we cannot say that, in this instance, granting CSB temporary custody of the children amounted to an unlawful seizure, and thus, violated Ms. Boso's constitutional rights. Ms. Boso's third assignment of error is overruled.
 D. Fifth Assignment of Error THE COURT ERRED IN MAKING IT'S [sic] FINDING OF EMERGENCY TEMPORARY CUSTODY AT THE INITIAL HEARING IN THAT THE COURT HAD INSUFFICIENT EVIDENCE OR STRENGTH OF EVIDENCE TO MAKE A FINDING OF NEED FOR SUCH TEMPORARY CUSTODY.
In this assignment of error, Ms. Boso argues that there was insufficient evidence to allow a finding of emergency temporary custody. Ms. Boso, however, did not interpose timely objections to the magistrate's order, pursuant to Juv.R. 40(C)(3)(b), and therefore, has waived this argument on appeal. Ms. Boso's fifth assignment of error is overruled.
 E. Sixth Assignment of Error THE COURT ERRED IN NOT REVIEWING APPELLANT'S AMENDED BRIEF IN THAT THERE WAS NO BRIEFING SCHEDULE, THE CHILDREN HAD BEEN RETURNED, AND THE STATE HAD YET NOT FILED A RESPONSE.
In her sixth assignment of error, Ms. Boso contends that the juvenile court erred in denying her motion to supplement her objections to the magistrate's decision. We disagree.
On November 18, 1999, Ms. Boso filed her objections to the magistrate's decision and requested that she be allowed to supplement her objections after receipt of the transcript. The transcript was filed on January 11, 2000. Two months later, on March 13, 2000, after reviewing the transcript, the juvenile court entered an order overruling Ms. Boso's objections and adopting the magistrate's decision. Subsequently, on March 15, 2000, Ms. Boso filed an amended brief supplementing her objections based on the hearing transcript. On March 22, 2000, the juvenile court found that Ms. Boso's amended brief was untimely, as it was filed over sixty days after the hearing transcript was filed. Under these circumstances, we cannot say that the trial court erred in finding that Ms. Boso's amended brief was untimely. Furthermore, Ms. Boso has not demonstrated how she was prejudiced as a result of the juvenile court's refusal to review her amended brief, as it was substantially similar to her original brief. Ms. Boso's sixth assignment of error is overruled.
 III.
Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ WILLIAM G. BATCHELDER
WHITMORE, J., QUILLIN, J., CONCUR.
(Quillin, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Section 6 (C), Article IV, Constitution.)
[1] On December 10, 1999, the Magistrate granted Ms. Boso legal custody of her children and ordered that CSB have protective supervision of the Lewis children. On April 10, 2000, the order for protective supervision was terminated. Nevertheless, we find that this case is not moot, as there are too many collateral consequences to the adjudication of dependency. See, generally, In re Watts (Jan. 11, 1999), Adams App. No. 97CA650, unreported, 1999 Ohio App. LEXIS 72, *4, *5.
[2] The complaint alleged that they had been evicted from the Twinsburg/Hudson residence.
[3] It is unclear from the record how CSB was initially contacted — whether the grandfather just dropped the children off at CSB or whether the hospital contacted CSB after learning that the grandfather would not be able to care for the children on the morning of July 12, 1999, due to having to go to work.