OPINION
{¶ 1} Amanda Lilly ("appellant") appeals from the determination of the Ashtabula County Court of Common Pleas, Juvenile Division, that her daughter, Angel, was neglected.
 {¶ 2} On February 1, 2002, the Ashtabula County Children Services Board ("ACCSB") filed a verified complaint alleging that Angel Goff (DOB October 15, 2001) is a neglected child. ACCSB received a complaint on January 29, 2002, that the home at which Angel resided was dirty and hazardous and that the care Angel and another baby received was questionable. A social worker visited the home on January 30, 2002, and observed leaking pipes, broken sewer lines, clutter, and a foul odor. Angel appeared to be clean but was severely underweight. On February 4, 2002, ACCSB was given temporary custody.
 {¶ 3} The matter came before the court for hearing on April 16, 2002. Cherie Jones, an ongoing worker employed by ACCSB, testified she opened an investigation of the household at which Angel resided on January 29, 2002. ACCSB received a referral that the home was hazardous, filthy, and unfit for children. There also was a concern that Angel and another baby, Christopher, were not being properly fed. Jones made two unsuccessful attempts to visit the home that day. Early the following day, Jones was able to gain entry into the home when appellant's mother, Grace Goff, answered the door.
 {¶ 4} Jones noticed boards with nails in them lying on the floor amid a lot of clutter. Jones reported the kitchen was relatively clean, in comparison with the rest of the house, although there was little food in the cupboards. Jones noticed a big hole in the dining room ceiling, exposing the plumbing. Goff claimed the boxes containing a lot of clutter were for a garage sale, although it was winter. Jones stated there was a terrible odor in the home. Goff stated the smell was due to a problem with the sewer pipes. Both Angel and Christopher appeared to be clean. Jones thought Angel looked extremely tiny for a three-month old infant. Jones believed the child looked malnourished and underweight. Angel was not very responsive and seemed listless.
 {¶ 5} Jones met with Angel's doctor the next day and learned there were concerns about her failure to thrive. Jones made the decision to remove Angel on January 31, 2002, after determining the information she received from the doctor and home health nurse did not match that received from Goff. Goff and appellant did take the baby to her doctor but they did not follow through with what the doctor wanted them to do for Angel. Appellant had not filled a prescription for a soy formula, needed because the baby was not keeping down the regular formula, although she had the prescription for four to five weeks. Appellant did not take the baby to a specialist for the failure to thrive, as recommended. Appellant additionally was to have taken the baby to an orthopedic surgeon, for evaluation of a curvature in one of her legs. She did not obtain prescribed orthopedic shoes for Angel. Jones reported that both appellant and her mother were resistant to available services.
 {¶ 6} After the baby was removed, she was taken to the specialist. He determined there was no disease causing her failure to thrive. Rather, the failure to thrive was attributed to a lack of stimulation and nutrition. Jones stated that the child was no longer pale, was responsive, and vocalizing. Angel had gained a tremendous amount of weight in a short period of time.
 {¶ 7} Appellant testified that she had taken Angel to the doctor five times following her birth. Appellant explained that ceiling tiles were missing because water lines were being replaced. The boards on the floor were wall trimmings her mother was trying to hang back on the wall. Appellant stated the prescription for formula was for the purposes of the WIC program, and was not to be filled at a pharmacy. Appellant testified she bought the formula herself, without using the prescription. Appellant tried eight different formulas. Appellant stated she did her best to comply with the doctor's instructions. Appellant explained that Angel was removed prior to her scheduled appointment with an orthopedic doctor.
 {¶ 8} Appellant stated she felt the conditions in the home were all right, although she moved out the day after Angel's removal. Appellant denied that the doctor ever told her about concerns regarding Angel's failure to thrive or that she take the baby to a specialist because of the concerns.
 {¶ 9} Grace Goff testified Angel has seen three doctors since her birth. She denied that appellant ever failed to do something for Angel's care that was recommended by a doctor. Goff admitted the home health nurse said Angel was not gaining weight at the rate she should have been. Goff stated the doctor did recommend Angel be taken to Rainbow Children's Hospital because she was not handling the different formulas. Goff stated there was not enough time between this recommendation and the removal for an appointment to be made.
 {¶ 10} On April 24, 2002, the trial court issued its judgment entry. The court found that appellant is not receptive to services being provided by ACCSB. The court determined appellant's mother, Grace Goff, was not truthful regarding Angel's circumstances in the home or with the doctors who have cared for the child. Angel's doctor suspects she suffers from a failure to thrive as she has not gained weight. The court found both appellant and her mother ignored doctors' orders, including medical and orthopedic advice. The court concluded that the parenting skills of appellant and her mother are highly suspect, and that neither is receptive to services or guidance.
 {¶ 11} The court found the home to be unsanitary and unsafe. The court found that Angel has developed and thrived while in foster care, gaining weight and being on track in her development. The court found there was clear and convincing evidence that Angel is a neglected child as defined by R.C. 2151.03(A)(2). ACCSB was given temporary custody of Angel.
 {¶ 12} Appellant assigns the following error for review:
 {¶ 13} "The Juvenile Court clearly erred in its finding of neglect under R.C. 2151.03(A)(2)."
 {¶ 14} In her assignment of error, appellant asserts the determination that Angel was a neglected child was an abuse of discretion. Appellant argues that the trial court's findings that medical orders were ignored and that the home was unsanitary and not safe were not substantiated by the record. Appellant submits that ACCSB did not present clear and convincing evidence that appellant's fault resulted in the child's neglect. Appellant maintains that the medical records, admitted at the hearing, do not show that appellant or her mother ignored any specific medical instructions or advice. Appellant argues that the doctor's recommendations were not scheduled appointments that were missed. Appellant disputes Angel was medically neglected, pointing out that she took Angel to the doctor five times, to the emergency room once for treatment of a virus, and to an orthopedic specialist, in the three and a half months following her birth.
 {¶ 15} Appellant also disputes that the home was unsanitary to the point where any danger was posed to Angel. A foul odor does not prove the baby was harmed and does not constitute a reason to remove a child from a home.
 {¶ 16} R.C. 2151.03(A)(2) defines a neglected child as "any child *** who lacks adequate care because of the faults or habits of the child's parents." Adequate parental care encompasses the provision of adequate food, clothing, and shelter to ensure the child's health and physical safety. A finding of neglect requires some showing that a parent is at fault before a finding of a lack of adequate care can be made. Inre Riddle, 79 Ohio St.3d 259, 1997-Ohio-391. The ultimate question is whether the child lacks adequate care due to the parent's faults or habits. Id.
 {¶ 17} A juvenile court has broad discretion in the disposition of an abused, neglected, or dependent child case. In re Barnhart, 4th Dist. No. 02CA21, 2002-Ohio-6024, 2002 Ohio App. LEXIS 5856. A reviewing court will not reverse a trial court's decision regarding the disposition of an abused, neglected, or dependent child absent an abuse of discretion. Id.
An abuse of discretion is more than an error of law or judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. An appellate court will defer to a trial court's determination on matters of credibility. This is especially crucial in child custody cases, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well. Davisv. Flickinger, 77 Ohio St.3d 415, 1997-Ohio-260.
 {¶ 18} The clear and convincing standard of proof is applied to the determination that a child is neglected. R.C. 2151.35(A); Juv.R. 29(E)(4). When the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof. In re Barnhart, supra. Clear and convincing evidence is that evidence, which will produce in the minds of the trier of fact, a firm belief as to the facts sought to be established. In re Weaver (1992),79 Ohio App.3d 59, 63. When competent, credible evidence does not exist to support factual findings by the trial court, an appellate court may overturn that decision as against the manifest weight of the evidence.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77.
 {¶ 19} Appellant primarily relies upon Angel's medical records to support her contention that she obtained proper medical care for Angel. The records do indicate that appellant sought medical care for her infant. However, those same records indicate Angel was diagnosed with failure to thrive and that there was no follow-up with an orthopedic surgeon regarding a hip dislocation. The orthopedic surgeon wanted Angel placed in a special shoe. Appellant admitted she had not obtained the shoe before Angel was removed. The doctor who saw Angel shortly after her removal submitted a report that laboratory tests indicated some decreased caloric intake and malnutrition. The doctor reported Angel gained weight, as noted at subsequent visits, eventually obtaining a good weight for her age.
 {¶ 20} The most compelling evidence supporting the finding of neglect is the difference between Angel's condition before her removal and afterwards. Angel suffered from a failure to thrive and was underweight and listless while in appellant's care. Following her placement in foster care, Angel gained weight and was developmentally on-track for her age.
 {¶ 21} Courts have considered a child's positive response to either foster care or another placement as evidence supporting the continued removal of the child from the biological parents. See In reAndrew B., 6th Dist. No. L-01-1440, 2002-Ohio-3977, 2002 Ohio App. LEXIS 4151; In re Decker, 4th Dist. No. 00CA039, 2001-Ohio-2380, 2001 Ohio App. LEXIS 542. The Montgomery Court of Common Pleas compared the care the child received in his foster home to that given the child by his parents in deciding that a grant of permanent custody was warranted. In reParson (Aug. 6, 1990), 2nd Dist. No. 11541, 1990 Ohio App. LEXIS 3303. See, also, In re Capps (Aug. 2, 1999), 12th Dist. No. CA98-11-234, 1999 Ohio App. LEXIS 3523. The Butler County Court of Appeals commented on a child's health improvement after removal from her parents to support the continuance of temporary custody with Children's Services. In re Bolser
(Jan. 31, 2000), 12th Dist. Nos. CA99-02-038, CA99-03-048, 2000 Ohio App. LEXIS 260.
 {¶ 22} The ultimate question in a finding of neglect is whether the child lacks adequate care due to the parent's faults or habits. In reJehosephat W., 6th Dist. No. L-01-1505, 2002-Ohio-5503, 2002 Ohio App. LEXIS 5514. The gist of appellant's appeal is that she did provide adequate care, including medical, for her daughter. Yet, if the fault lay not in the care but in a medical condition of the child, then Angel would have continued to fail to thrive after her removal from her mother's care. Instead, Angel gained weight and achieved normal development for her age shortly after her placement in foster care. This evidence supports the finding of a lack of adequate care by appellant.
 {¶ 23} There is evidence in the record that appellant and her mother were resistant to advice and assistance, medical and otherwise. Appellant did not receive any prenatal care prior to Angel's birth, apparently because she was unaware of the pregnancy. Angel was born with medical problems that were only partially addressed by appellant and her mother. The medical evidence admitted supports the trial court's determination.
 {¶ 24} The record also shows that the home was not fit for an infant. The caseworker described excessive clutter, exposed plumbing, a problem with the sewer pipes, and a foul odor in the home. There was little food in the cupboards. Neither appellant nor her mother appeared to be doing much to remedy the situation. Appellant argues that, if the situation was so dire, the case worker would have removed Angel immediately. In In re James, 9th Dist. No. 20529, 2001-Ohio-1945, 2001 Ohio App. LEXIS 5689, the trial court determined that the decision by the county services board to remove children a day after the initial visit showed that the conditions in the home were not hazardous. The Summit County Court of Appeals reversed, finding that the mistake in delaying the removal of the children did not negate the fact that the home was a hazard to their health and well-being. In the instant case, the caseworker conducted further investigation by interviewing Angel's doctor the following day. After meeting with the doctor, the caseworker made the decision to remove the baby from appellant's home. The slight delay is hardly an indication that the caseworker was not concerned about the conditions at the home.
 {¶ 25} There is clear and convincing evidence in the record supporting the trial court's decision. Appellant's first assignment of error is overruled. The judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.
JUDITH A. CHRISTLEY, P.J., and WILLIAM M. O'NEILL, J., concur.