DECISION AND JUDGMENT ENTRY
This is an appeal from an Athens County Common Pleas Court, Juvenile Division, judgment that awarded temporary custody of Sara[1] Lewis, date of birth January 30, 1987, to appellee, Athens County Children Services (ACCS).
Appellant, Sherry Lewis, the natural mother of the child, assigns the following errors.
FIRST ASSIGNMENT OF ERROR:
 "THE JUVENILE COURT'S FINDING THAT IT WAS IN THE BEST INTEREST OF SARA LEWIS TO GRANT TEMPORARY CUSTODY TO ATHENS COUNTY CHILDREN SERVICES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
SECOND ASSIGNMENT OF ERROR:
 "THE JUVENILE COURT ERRED IN FAILING TO PLACE SARA LEWIS WITH HER GRANDPARENTS WHEN SAID RELATIVES WERE FOUND TO BE SUITABLE BY A HOME STUDY CONDUCTED BY ATHENS COUNTY CHILDREN SERVICES."
THIRD ASSIGNMENT OF ERROR:
 "THE JUVENILE COURT ERRED IN FINDING THAT ATHENS COUNTY CHILDREN SERVICES MADE REASONABLE EFFORTS TO PREVENT THE REMOVAL OF THE CHILD FORM THE CHILD'S HOME, TO ELIMINATE THE CONTINUED REMOVAL OF THE CHILD FROM THE CHILD'S HOME, OR TO MAKE IT POSSIBLE FOR THE CHILD TO RETURN SAFELY HOME."
Our review of the record reveals the following facts. On June 25, 1999, ACCS filed a complaint alleging Sara Lewis to be a neglected and dependent child. See R.C. 2151.03 and 2151.04.[2] The complaint alleged that: (1) ACCS had received numerous referrals that Sara is left unsupervised, is dirty, and lacks proper hygiene; (2) the home is filthy and "smelly"; (3) Sara has had head lice which has caused her to miss many school days; (4) Sara has exhibited uncontrollable behavior at school; and (5) Sara may not have been receiving proper medication. The complaint sought protective supervision of Sara.
On August 18, 1999, the trial court found Sara to be a neglected and dependent child. As part of the order, the parties agreed that Sara would remain in ACCS's protective supervision from July 14, 1999 to July 14, 2000.
On September 17, 1999 ACCS filed a case plan. The case plan noted the following concerns: (1) appellant provides little supervision; (2) appellant has "very poor parenting skills and high stress"; (3) Sara is "dirty and [has] lice during school"; (4) Sara has "mental, emotional, developmental and physical problems." The case plan required appellant,inter alia, to demonstrate that she could: (1) maintain a clean home; (2) properly parent Sara, as well as the other siblings; and (3) foster an environment that would help Sara's mental, emotional, development and physical problems.
On November 10, 1999, ACCS filed a motion for a restraining order against Bradley Burchfield.[3] ACCS advised the court that Burchfield is a convicted child molester and that ACCS recently became aware that appellant has allowed Burchfield to reside or visit with her children. ACCS thus requested the court to order Burchfield out of appellant's home and to restrain appellant from allowing Burchfield to have any contact with her children.
On November 19, 1999, ACCS filed a motion to modify the trial court's order from protective supervision to an emergency order of temporary custody to ACCS. ACCS alleged that appellant had failed to comply with the case plan. ACCS noted that: (1) the home continues to be infested with lice and that the children continue to miss school due to the lice problem; (2) appellant failed to schedule a medical examination for Sara; (3) Sara continues to attend school dirty, "smelling foul" and "inappropriately dressed for the weather"; (4) ACCS receives numerous calls regarding the care and lack of supervision of appellant's children; and (5) appellant is permitting Burchfield to reside and to visit with the children.
The court subsequently granted ACCS's request for a restraining order and modified the disposition to temporary custody. The court found that appellant has failed to comply with the case plan and that the child was in "immediate danger" from her surroundings. The court ordered appellant not to permit Burchfield to have contact with her children "by any means, either directly or indirectly, and shall not allow [Burchfield] to come within 300 feet of her residence at any time, even when the children are not there." The court also restrained Burchfield from having contact with any of appellant's children.
On December 9, 1999, ACCS filed a "Semiannual Administrative Review." The review noted that: (1) Sara has not received her medical exam; (2) appellant needs to demonstrate her ability to supervise her child; (3) appellant remains verbally and emotionally abusive to her child; (4) appellant needs to receive individual counseling; (5) appellant needs to improve parenting and coping skills; (6) appellant needs to demonstrate ability to meet her child's basic needs; (7) appellant needs to improve her housekeeping skills; (8) appellant needs to provide a lice-free home; (9) Sara needs to receive regular counseling; and (10) appellant needs to demonstrate that she can provide for her child's physical and medical needs.
On July 12, 2000, the court issued an "agreed journal entry." The entry noted that Sara is in her mother's custody and that a protective supervision order remains in place until January 14, 2001.
On August 1, 2000, ACCS removed Sara from appellant's home pursuant to an emergency custody order. ACCS had learned that appellant was homeless.
On August 2, 2000, ACCS filed a motion to continue the August 1, 2000 emergency custody order. ACCS's motion noted that on July 24, 2000, Sara had disclosed several things to her counselor: (1) Sara is angry at appellant for spending all of her time with Burchfield; and (2) Sara does not feel close to appellant like she does to her aunt Portia.
ACCS's motion further noted that Sara's aunt Portia has been attending Sara's counseling appointments. At one of the counseling sessions, Portia stated that she does not feel that appellant wants her children returned because appellant is still spending time with Burchfield.
The motion also noted that as of July 31, 2000, appellant was evicted from her home due to unpaid rent, unpaid utilities, and an unclean home. ACCS alleged that appellant is living with her parents until she finds an appropriate home. ACCS asserted that the parents' home is an overcrowded, three-bedroom mobile home housing ten people. ACCS reported that Sara allegedly had been living at her grandparents' mobile home for the past several months, while appellant was living elsewhere. ACCS claimed that appellant reportedly was living with Burchfield.
For the same reasons outlined above, ACCS also filed a motion to modify the disposition from protective supervision to temporary custody.
On August 2, 2000, the trial court held a hearing regarding ACCS's motion for emergency temporary custody. The court found that ACCS had provided appellant with services such as case management, homemaker information, referral services, and counseling services and that appellant has not complied with or followed through with the recommendations. The court determined that the child is in immediate danger and, pursuant to Juv.R. 13, awarded ACCS temporary custody. The court further ordered ACCS to conduct a home study of the grandparents' home.
On August 15, 2000, ACCS Caseworker Brittany Dodd filed a "Notice of Filing of Attempted Homestudy." Dodd stated that when she went to the grandparents' home, Sara's grandmother would not allow her in the home. The grandmother informed her that "she was `babysitting eight kids.'" Dodd explained what she observed when she attempted to conduct the home study:
 "During the time at the home this caseworker observed six adults * * *, a teenage boy and at least 3-4 young children at the home. The outside area of the home appeared to be cluttered and this caseworker observed Sherry tossing a sharp metal lid from a can of Vienna sausages into the yard."
Pursuant to the grandmother's request, Dodd and the grandmother scheduled an appointment for a home study for August 17, 2000. Dodd's August 17, 2000 home study concluded that she could discern no reason why Sara could not be placed with her grandparents. Her home study noted, however, that the grandparents denied her permission to examine at least two of the rooms.
On August 28, 2000, the guardian ad litem filed a report. The guardianad litem noted that appellant "vocally expresses her concern for her children and her desire to have them returned to her home." The guardianad litem stated, however, that after fifteen months of intensive assistance from ACCS, appellant's home conditions have not improved. The guardian ad litem noted that: (1) appellant leaves old food sitting out in the kitchen; (2) the bathroom contains dirty appliances; (3) the carpet is black where no rug has been placed to catch outside dirt; (4) feces and fleas exist in the home; (5) piles of clothing exist in every room. The guardian ad litem noted that the above conditions persisted even through the period of four months when only fourteen year old Sara was in the home.
The guardian ad litem stated that appellant had been evicted and had allowed Sara to live with eight other people at her grandparents' trailer "surrounded by her cousins who are the alleged sexual perpetrators."[4]
The guardian ad litem concluded that appellant is unable to demonstrate a consistent ability to supervise her child and stated: "It appears that her children and their cousins are often left unsupervised and inflict sexual abuse upon each other."
The guardian ad litem noted that appellant had been unemployed from January through July, but that appellant recently became employed at a fast-food restaurant and has contracted for new housing. The guardian adlitem stated, however, that the new home reportedly is "in an unacceptable condition," and that "if [appellant] could not keep her previous home in adequate condition, why should we believe this home would be different."
The guardian ad litem recommended, inter alia, that: (1) ACCS retain temporary custody of Sara; (2) appellant bring her current home to an acceptable condition and maintain it; and (3) appellant maintain employment.
On September 1, 2000, the court continued the emergency custody order. The court found that appellant recently became employed and has found a new home, but that her home is "in a state of advanced uncleanliness." The court also noted that ACCS had alleged that appellant was spending "a considerable amount of time" with Burchfield.
On October 24, 25 and 26, 2000, the trial court held a hearing regarding ACCS's motion for temporary custody. At the hearing, Tri-County Mental Health and Counseling Services counselor Cynthia L. Mitchell testified that she counseled Sara. Mitchell stated that (1) she initially diagnosed Sara with "adjustment disorder with mixed disturbance of emotions and conduct"; (2) she has had fourteen individual sessions with Sara and that appellant has attended only five of the fourteen sessions; and (3) either Sara's foster parent or aunt Portia attended the other sessions.
Mitchell noted that when appellant was present for the counseling sessions, Sara was "very passive" and had difficulty focusing on one topic and discussing it, especially the topic of sexual abuse.
When Sara's aunt Portia attended the sessions, Mitchell testified that Sara's "affect was very verbal." Mitchell stated that it appeared that Sara and her aunt were "very close" and that Sara had asked to live with her aunt.
Mitchell testified that Sara told her that she and appellant were "best friends," but that Sara also told Mitchell that she did not want to see appellant. Mitchell explained that Sara felt that appellant did not care about her. Mitchell also stated that she was troubled that Sara stated that appellant was her best friend because she did not believe being "best friends" was an appropriate mother-daughter role.
Mitchell testified that Sara told her of an occasion when appellant asked Sara about moving. Sara told appellant that she did not want to move because she wanted to be near her grandmother and her aunt. Sara told Mitchell that appellant replied: "I'll just give you back to Children Services."
Mitchell testified that she questions whether Sara has appropriate sexual boundaries. Mitchell explained that Sara's brother reported that he saw Sara having sex with her eleven year old cousin. Mitchell is concerned about Sara's ability to understand appropriate and inappropriate touch and appropriate and inappropriate interactions with the people in her life. Mitchell stated that she has not yet discussed the sexual issues with Sara because Sara is in a very fragile state due to being in foster care.
Mitchell testified that Sara had told her that she is upset that she is not at home. Sara told Mitchell that the reason she wants to return home is so she can see her grandmother and her aunt.
Mitchell stated that on June 24, 2000, Sara and Portia came to a session. They reported that appellant continued to see Burchfield even though appellant knew that he was a sex offender. Sara stated that Burchfield calls her grandmother's home. Sara told Mitchell that Burchfield scared her. Mitchell stated that appellant's interaction with Burchfield interferes with Sara's ability to feel safe.
Mitchell testified that Portia had stated that appellant could be doing more to have custody of her children returned to her. She stated that Portia "questioned `if [appellant] really wanted her children back.'" Portia also stated that appellant mentioned wanting to move so she could spend more time with Burchfield.
Mitchell eventually changed her diagnosis of Sara to "post-traumatic stress disorder, chronic." She explained that the original trauma was sexual abuse. She stated that the best environment for Sara would be "[a]n environment where her physical need and her emotional needs can be met. An environment where she feels safe and where there are appropriate boundaries present."
Jeffrey Higgins, appellant's former landlord, testified that when he evicted appellant from the home, the home "definitely" was "not habitable." He stated that doors were ripped off the hinges and that some doors had holes busted through them. Higgins also stated that he had seen Burchfield at the home for approximately one month.
Jerry Lewis, appellant's brother, testified that he had heard that appellant was living with Burchfield and that appellant had admitted to him that she was seeing Burchfield. Lewis stated that he believed Sara's grandparents were capable of caring for Sara.
ACCS homemaker Jackie Covert testified that she worked with appellant on her housekeeping skills, her parenting skills and her budgeting skills. Covert explained that appellant needed to work on her housekeeping skills. She stated that appellant's home: (1) was dirty; (2) had clothes, toys, and paper on the floor; (3) had dirty dishes in the sink with water standing on them or had dishes sitting in the kitchen or living room; (4) sometimes had a bad odor — a combination of trash, dirty clothes, and pet urine. Covert explained that appellant had difficulty keeping her home clean both when the children living with her and when they were not.
Covert stated that in June of 2000, appellant's home was infested with fleas. She stated that when the children visited appellant's home, the fleas bit them. Also, in the four to six months leading up to the hearing, the children have contracted lice while visiting appellant. One of the children reportedly was infected with a crab louse.
Covert described appellant's current home as a three-bedroom trailer that is in "pretty bad shape." She stated that the carpet and walls are dirty and that the home has many cobwebs. Covert explained, however, that she has not seen appellant's home since appellant moved in.
Covert stated that she visited appellant's home when the children were present and that the environment was "chaotic." Covert explained that the children would run around and get into everything and that appellant would yell at children, but the children would not listen.
Caseworker Jill Dorfman testified that she also observed appellant's poor housekeeping skills. As an example, she stated that one day, she noticed one of appellant's children drinking pear juice from a plastic cup with a straw attached to it. Dorfman stated that the following week, gnats were swarming around the cup and had gathered throughout the kitchen. Dorfman further stated that appellant would leave dishes soaking in soapy water and then, without rinsing the dishes, remove the dishes from the soapy water and serve food on them.
Dorfman stated that appellant's current residence was unclean at first, but that appellant has managed to improve the home's cleanliness. Dorfman noted that appellant's visits with her children continue to be chaotic and that appellant had a difficult time trying to control her children.
Dorfman admitted that Dodd had concluded that the grandparents' home would be suitable for placement, but Dorfman stated that she disagreed with Dodd's assessment. Dorfman noted that Dodd was not permitted to examine two bedrooms and a bathroom and that Dodd had not been working with the family on a consistent basis.
Appellant testified that she has been living at her new home for about one month and that she has been working at McDonald's restaurant since August 11, 2000. Appellant denied current involvement with Burchfield.
On February 14, 2001, the trial court granted ACCS temporary custody of Sara. The court found that temporary custody serves Sara's best interests. The court further found that ACCS has made reasonable efforts to prevent Sara's removal from the home. The court noted that ACCS has provided homemaking services, case management, counseling referrals, substitute care, financial assistance, and transportation services.
On February 28, 2001, the trial court issued findings of fact and conclusions of law. The trial court determined that temporary custody serves Sara's best interests. The trial court found that Sara should live in an environment that: (1) is physically and emotionally nurturing; (2) is safe; and (3) could provide appropriate boundaries, including appropriate sexual boundaries. The trial court found that the state of uncleanliness that existed in appellant's home created a hazard to Sara.
The trial court concluded that a suitable relative placement did not exist. The court found that Sara's grandmother was overwhelmed with other children. She cares for Portia's children and sometimes cares for some of her other grandchildren. The court believed that the environment would be too chaotic for Sara to thrive. The court also noted that appellant disparaged her father. The court also determined that Portia was not a suitable relative placement.
The court further found that Dodd's home study was incomplete, because she was not allowed to examine all of the rooms. The court stated: "A home study that approved this home only approved half of the home. A complete home study is what the Court requested."
The court found that ACCS had made reasonable efforts to prevent the removal of the child from the home. The court noted that ACCS provided homemaking service, case management, counseling referrals, substitute care, financial assistance, and transportation services. The court further found that appellant has not demonstrated progress in complying with her case plan.
Appellant filed a timely notice of appeal. Because appellant's three assignments of error raise the related issue of whether the trial court erred by awarding ACCS temporary custody, we address the assignments of error together.
In her assignments of error, appellant asserts that the trial court's decision to award ACCS temporary custody is against the manifest weight of the evidence. First, appellant contends that the trial court's finding that temporary custody serves Sara's best interests is against the manifest weight of the evidence. Appellant asserts that the trial court primarily based its decision on "unsubstantiated hearsay statements" relating to appellant's contact with Burchfield. Appellant argues that the hearsay statements are inherently unreliable and that the trial court should not have considered the statements. Appellant asserts that without the hearsay evidence of appellant's association with Burchfield, insufficient evidence existed to support the trial court's finding that Sara's best interests would be served by awarding ACCS temporary custody.
Second, appellant asserts that the trial court's finding that a suitable relative placement for Sara did not exist is against the manifest weight of the evidence. Rather, appellant believes that the trial court should have awarded custody to Sara's grandparents. Appellant notes that Dodd's home study concluded that no reason existed why the grandparents would not be a suitable relative placement. Appellant further asserts that the trial court's finding that the grandparents would not be a suitable placement was based upon "unsubstantiated hearsay."
Appellant further asserts that the trial court should have discounted caseworker Dorfman's testimony regarding appellant's control over her children "in light of the fact that she has no children of her own, is only twenty-two years old and, at the time of the hearing, was only a few months out of college."
Third, appellant argues that the trial court's finding that ACCS made reasonable efforts to prevent the removal and continued removal of the child from her mother's home is against the manifest weight of the evidence. Appellant asserts that ACCS failed to make reasonable efforts by failing to place the child with her grandparents and by failing to return the child to her mother, once her mother resolved the problems that led to the removal.
A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" right to raise his or her children. In re Murray (1990), 52 Ohio St.3d 155,156, 556 N.E.2d 1169, 1171. We note, however, that the rights and interests of the parent are not absolute.
A juvenile court has broad discretion in the disposition of an abused, neglect, or dependent child case. See R.C. 2151.353(A) and Juv.R. 29(D). Pursuant to R.C. 2151.353(A), the court may make any of the following orders with respect to a dependent child:
(1) Place the child in protective supervision;
 (2) Commit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified family foster home or in any other home approved by the court;
 (3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child;
 (4) Commit the child to the permanent custody of a public children services agency or private child placing agency; or
 (5) Place the child in long-term family foster care with a public children services agency.
In choosing among the alternatives, the best interests of the child is the court's primary consideration. See In re Pryor (1993),86 Ohio App.3d 327, 620 N.E.2d 973. Furthermore, in making its dispositional order, the court must consider which situation will best promote the "care, protection, and mental and physical development" of the child. R.C. 2151.01(A). The court should separate the child from his family environment "only when necessary for his welfare." R.C. 2151.01(C);In re Escue (May 11, 1981), Lawrence App. No. 1487, unreported.
Our analysis begins from the premise that the choice between dispositional alternatives for dependent children is left to the sound discretion of the trial court. In re Knight (Mar. 22, 2000), Lorain App. Nos. 98CA7258 98CA7266, unreported; In re Evens (Feb. 2, 2000), Summit App. No. 19489, unreported; In re Collier (Feb. 4, 1992), Athens App. No. CA-1494, unreported. A reviewing court will not reverse that choice absent a showing of an abuse of discretion. In re Riddle (1997),79 Ohio St.3d 259, 680 N.E.2d 1227; In re Hulsey (Sept. 12, 1995), Adams App. No. 95CA599, unreported; In re Berry (Dec. 12, 1990), Franklin App. No. 90AP-850, unreported. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. See Landis v. Grange Mut. Ins. Co. (1998),82 Ohio St.3d 339, 342, 695 N.E.2d 1140, 1142; Malone v. Courtyard byMarriott L.P. (1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242, 1249.
Appellate courts are admonished that when they apply the abuse of discretion standard, they are not free to substitute their own judgment for that of the trial court. See State ex rel. Duncan v. Chippewa Twp.Trustees (1995), 73 Ohio St.3d 728, 732, 654 N.E.2d 1254, 1258; In reJane Doe 1 (1991), 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181, 1184;Berk v. Mathews (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308. Indeed, in order to establish an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will, but the perversity of will; not the exercise of judgment, but the defiance of judgment; not the exercise of reason, but instead passion or bias. Nakoff v. Fairview Gen. Hosp. (1996),75 Ohio St.3d 254, 256, 662 N.E.2d 1, 3.
Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159,1162. Id., 77 Ohio St.3d at 419, 674 N.E.2d at 1163.
With the foregoing principles in mind, we cannot say that the trial court abused its discretion by awarding temporary custody to ACCS.
First, with respect to appellant's argument raised in his first and second assignments of error that the trial court relied upon unsubstantiated hearsay in determining that the child's best interests would be served by awarding ACCS temporary custody and in determining that a suitable relative placement did not exist, we note that Juv.R. 34(B)(2) permits a juvenile court to consider hearsay evidence when choosing among dispositional alternatives.
Second, we find substantial competent and credible evidence to support the trial court's decision to award ACCS temporary custody. Evidence exists that appellant continues to be involved with Burchfield, a convicted child molester. Evidence exists that appellant has a chronic problem with maintaining a sanitary home. We agree with the trial court that the foregoing two factors create an unsafe environment for Sara. We find no abuse of the trial court's discretion.
Third, we disagree with appellant that the trial court's finding that no suitable relative placement was available is against the manifest weight of the evidence. Although we recognize that Dodd's home study concluded that the grandparents' home would be suitable, we note, as did the trial court, that Dodd's home study was not a complete home study. We believe that the trial court was well within its discretion to give little weight to an incomplete home study. We further note that the statute does not require a juvenile court find that a relative is an unsuitable placement option prior to awarding temporary (or permanent) custody to a children services agency. Relatives who seek the placement of a child are not afforded the same presumptive rights that a natural parent receives as a matter of law. See In re Davis (Oct. 12, 2000), Cuyahoga App. No. 77124, unreported. Rather, the juvenile court is vested with discretion to determine what placement option is in the child's best interest. See, also, In re Patterson (1999), 134 Ohio App.3d 119,730 N.E.2d 439; In re Benavides (May 3, 2001), Cuyahoga App. No. 78204, unreported.
Moreover, we disagree with appellant's argument that the trial court should have given Dorfman's testimony little weight. It is well-settled that issues of credibility are reserved to the fact-finder. See, e.g.,Davis, supra. We further note that on cross-examination, appellant's counsel questioned Dorfman about her age, qualifications, and experience. Thus, the trial court was well-aware of Dorfman's age, qualifications, and experience and was entitled to weigh those factors accordingly. Thus, we believe that substantial, competent and credible evidence supports the trial court's finding that no suitable relative placement is available. Evidence exists that the grandparents' home is overflowing with children and that the grandmother often cares for many children at a time.
Fourth, we disagree with appellant that the trial court's finding that ACCS made reasonable efforts is against the manifest weight of the evidence. Ample competent and credible evidence exists that ACCS provided extensive services to appellant, including, inter alia, case management, counseling, and housekeeping management. Despite ACCS's efforts, appellant has not consistently demonstrated an ability to provide a sanitary, safe, and nurturing environment for Sara.
Furthermore, we disagree with appellant that ACCS failed to make reasonable efforts by not allowing Sara to stay at her grandparents' home. As we noted above, evidence exists that the grandparents' home was not suitable for Sara.
Although much of the evidence relating to the conditions and environment concerned what has occurred in the past, as we stated in Inre Burchfield (1988), 51 Ohio App.3d 148, 156-57, 555 N.E.2d 325, 333:
 "`[T]he child does not first have to be put into a particular environment before a court can determine that [the] environment is unhealthy or unsafe. * * * The unfitness of a parent, guardian or custodian can be predicted by past history.'"
(quoting In re Bishop (1987), 36 Ohio App.3d 123, 126, 521 N.E.2d 838,841) (citations omitted). Furthermore, courts have recognized that:
 "` * * * [A] child should not have to endure the inevitable to its great detriment and harm in order to give the * * * [parent] an opportunity to prove her suitability. To anticipate the future, however, is at most, a difficult basis for a judicial determination. The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the * * * [parent]. * * * The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm.'"
Bishop, 36 Ohio App.3d at 126, 521 N.E.2d at 841-42 (quoting In reEast (1972), 32 Ohio Misc. 65, 69, 288 N.E.2d 343, 346).
Based upon the foregoing reasons, we conclude that the trial court did not abuse its discretion by awarding ACCS temporary custody of Sara. Accordingly, we overrule appellant's first, second, and third assignments of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J. Kline, J.: Concur in Judgment Opinion.
[1] In the record, two different spelling of the child's name appear: Sara and Sarah. We use the spelling as it appears on the original complaint and as it appears in the parties' appellate briefs.
[2] ACCS also filed complaints involving other Lewis children. The present appeal concerns Sara Lewis only.
[3] We note that two different spellings of Burchfield's name appear in the record: Burchfield and Birchfield. We use the spelling as it appears in the parties' appellate briefs.
[4] Some allegations appear in the record that Sara's cousins sexually abused her.