DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
The Summit County Children Services Board ("CSB") has appealed a decision of the Summit County Court of Common Pleas, Juvenile Division, which found that CSB failed to prove by clear and convincing evidence that Shyanne, Cody, and Savanna James are dependent and neglected children. This Court reverses and remands for further proceedings consistent with this opinion.
 I
Shyanne, Cody, and Savanna James were taken into custody pursuant to Juv.R. 6, after CSB workers found the children to be living in deplorable conditions, and left in the supervision of a person whom CSB deemed to be an inappropriate caregiver. CSB filed complaints in the Summit County Juvenile Court seeking emergency temporary custody of the children and asserting that all three children were neglected as defined in R.C.2151.03(A)(2) and (3), and dependent under R.C. 2151.03(B) and (C). The complaints further charged that Cody was also a neglected child under R.C. 2151.03(A)(6). Additionally, CSB requested permanent custody of the children on the basis that Shyanne and Cody had been in CSB's custody on four separate occasions since Cody's birth in March 1998, due to the parents' inability to adequately care for the children, and based on the parents' inability or unwillingness to provide a permanent appropriate home for any of the three children.
An adjudicatory hearing was held, and the trial court found that CSB failed to demonstrate by clear and convincing evidence that the minor children are neglected or dependent children. The court dismissed the complaints and closed the case. CSB has timely appealed, and has asserted one error, which this Court finds meritorious.
 II ASSIGNMENT OF ERROR THE JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. CSB has argued that the trial court's findings that Shyanne, Cody, and Savanna James are not dependent or neglected is against the manifest weight of the evidence. CSB has asserted, inter alia, that the trial court should have found the children to be dependent and neglected under R.C. 2151.04(C) and R.C. 2151.03(A)(2) based on the conditions of the home and the fact that Cindy and Franklin James left their children in the care of Metzler, their maternal great-grandmother, who is not a fit custodian.
In determining whether a civil judgment is against the manifest weight of the evidence, this Court must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.
 Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14, quoting State v. Shue
(1994), 97 Ohio App.3d 459, 466. This action is reserved for the exceptional case, where the judgment is "so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice[.]" Hardiman v. Zep Mfg. Co. (1984), 14 Ohio App.3d 222, 226, quoting Royer v. Bd. of Edn. (1977), 51 Ohio App.2d 17, 20.
R.C. 2151.03(A)(2) defines a neglected child as "any child * * * [w]ho lacks adequate parental care because of the faults or habits of the child's parents[.]" "`Adequate parental care' means the provision by a child's * * * parents * * * of adequate food, clothing, and shelter to ensure the child's health and physical safety[.]" R.C. 2151.011(B)(1). A dependent child under R.C. 2151.04(C) is defined as a child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" In order to establish that a child is dependent or neglected, the evidence must be clear and convincing. See R.C. 2151.35(A) and Juv.R. 29(E)(4). Clear and convincing evidence is proof "[w]hich will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." State v. Schiebel (1990), 55 Ohio St.3d 71, 74.
The determination that a child is dependent requires no showing of fault on the parent's part, but rather focuses solely upon "the child's situation to determine whether the child is without proper (or adequate) care or support." In re Riddle (1997), 79 Ohio St.3d 259, 262. A determination that a child is neglected, however, "requires some showing that parents * * * [are] at fault before a finding of a lack of proper (or adequate) care can be made." Id.
A thorough review of the record reveals that this is the exceptional case where the lower court clearly lost its way and the judgment must be reversed. Clearly, the James children were dependent, as the home in which they were living was detrimental to their health and well-being.
On July 31, 2000, a CSB caseworker and a registered nurse went to the home of Mary Metzler to check the elderly woman's hair for lice and nits, as Metzler had a long history of such problems. While there, the workers discovered that Metzler's granddaughter, Cindy James, was also living in the home, along with Cindy's husband Franklin James and their three children. The workers were familiar with the James family, as they also had a lengthy history with CSB. The workers found "bugs crawling around in [Metzler's] hair," and the house to be in a deplorable condition. The CSB employees left the home stating that they would be back the next day to follow up on the situation.
The following day CSB returned to the home and found Metzler babysitting three-year-old Shyanne, two-year-old Cody, and five-day-old Savanna. The house was in the same atrocious condition as the day before. There was a bucket in the kitchen catching sewage from an upstairs bathroom that was half-full, accessible to the children, used as an ashtray by Cindy, and which caused the house to smell of urine, feces, and must. There appeared to be toilet paper floating in the bucket. The house was cluttered with papers, clothes, and debris. There was broken glass on the front porch, and paint chips on the stairs. The basement had dog excrement and broken glass on the floor.
The CSB workers heard Savanna crying, but Metzler could not hear the infant's cries. Savanna was found lying in Metzler's bed on the second floor of the house. The workers were concerned because they had found Metzler to be infested with bugs the day before. The workers were afraid to leave the children alone with Metzler because they believed Metzler was unable to provide adequate care and supervision. Metzler had to use a three-pronged cane and the railing to climb the stairs, and she had been unable to hear Savanna crying. The workers witnessed Cody attempt to put things into the electrical sockets. The CSB workers were in the home for approximately forty-five minutes when they decided to call police because the children's parents had not returned. Police arrived almost a half hour later, and the children were taken into custody.
The trial court found that CSB failed to demonstrate by clear and convincing evidence that the minor children are dependent children, reasoning that "if the conditions of the home were so hazardous as to warrant the removal of the children from mother and father, * * * CSB would have acted immediately on July 31, 2000, rather than wait one day and risk harm to the children." CSB has conceded that it was a mistake to wait one day before taking the children out of the home. This mistake does not negate the fact that the home was a hazard to the children's health and well-being. The children cannot be punished because an agency erred in favor of parental rights. Accordingly, the lower court's finding that Shyanne, Cody, and Savanna James are not dependent children is against the manifest weight of the evidence.
This Court further finds that the lower court's determination that the James children are not neglected as defined in R.C. 2151.03(A)(2), is also against the manifest weight of the evidence. The evidence distinctly shows that the James children lacked adequate shelter to ensure their health and physical safety due to Cindy and Franklin James' faults or habits.
The record reveals that CSB has a lengthy history with the James family, and that the problem has continually been that Cindy and Franklin have been unable to adequately care for these children. Prior to the initiation of the present case, Shyanne and Cody had been in CSB's custody on four separate occasions since Cody's birth in March 1998. On July 17, 1998, Shyanne and Cody were placed in the emergency temporary custody of CSB "after they were found to be living in a roach infested, filthy home. Shyanne was diagnosed as having lice and ringworm." On September 10, 1998, the children were returned to Cindy and Franklin's custody under CSB's protective supervision, because the house had been cleaned and sprayed for insects. However, the children were again removed from the home and placed in CSB's emergency temporary custody in April 1999, because "[t]he parents, despite the provision of their intensive home based services by [CSB]'s Homemaker Program, have allowed the condition of the children and the condition of the home to deteriorate to a point where the children are Endangered." The record explains that:
 The parents * * * have not ensured these children are receiving appropriate medical care. * * * Both children continue to have a lice problem. Shyanne's lice problem has become severe. Her head is full of scabs from her scratching and is heavily infested with visible bugs. The mother also has lice. * * * Cody also suffers from lice and is behind in his immunizations."
 [CSB] reported that the lice are so severe on [two-year-old] Shyanne's head, she has scratched her head so severely, that the scalp has portions of it peeling away. It took four hours at the [SCCSB] Clinic * * * to try to remove just the visible lice from Shyanne's head. Even then they could not get all of the visible lice.
 The July 15, 1999 magistrate's report indicates that the conditions of the home as described in the present case are not unique:
 There is some question as to whether the repairs which need to be made to the house are structural or merely cosmetic. In any event, one of the repairs involves the replacement of a second floor toilet in the bathroom which had previously been leaking and causing a foul odor in the home, as well as extensive ceiling damage to the first floor of the home. * * * [T]he primary concern is that the source of the foul stench be addressed and removed. The bathroom/plumbing remodeling must be completed so that, at least that source of concern is alleviated.
 The court decided to give Cindy and Franklin another chance to be united with their children. However, the magistrate warned:
 [T]he children have now been removed for the second time from this family. Should they need to be removed again, the Court may very seriously question whether it would be in the children's best interest to be returned [to the parents] for a third time.
* * *
 The Magistrate has some serious remaining concerns as to whether the parents will be able to make the necessary changes to maintain the cleanliness of the home and provide appropriate care and a healthful environment for these children on a long term basis. However now that numerous additional services will be in place * * * [CSB is] recommending that this family be given another chance to maintain the children in the home.
* * *
 The Magistrate Orders that the parents are to have all plumbing and toilet repairs in the second floor bathroom completed and the first floor ceiling holes repaired on or before July 19, 1999.
 Despite CSB's and the lower court's efforts to help Cindy and Franklin, the record shows:
 On Thursday, December 9, 1999, the Attorney/ Guardian ad Litem, * * * went to the home for an unannounced visit and found it to be in deplorable condition. Both of the children had lice. Furthermore, there were dirty clothes, old food, and trash all over the floors. Also, there were countless gnats flying in the kitchen, rotten food in the refrigerator, and an overflowing trash bag at the bottom of the basement stairs. Cody (* * *age 1 ½) was observed in his crib crying, with no linens in the bed, and food particles in and around the crib. * * *
 Additionally, the other conditions in the house where the family resides, are again deteriorating. The leaky toilet in the apartment of the great-grandmother who lives upstairs, is recurring. The worker and Guardian observed more brown spots on the ceiling, as had occurred when the toilet was leaking earlier, creating a foul stench throughout the home. Also, the Attorney/ Guardian ad Litem, after repeatedly telling the parents that they were not to allow either child to go upstairs to visit the great-grandmother, due to the unhealthful and unsanitary conditions upstairs, observed that the parents were actually having the great-grandmother babysit the children.* * *
 Cindy and Franklin improved their personal hygiene and moved out of Metzler's home and rented an appropriate apartment. From January 18 to May 9, 2000, Cindy and Franklin were "lice free." They were commended for their efforts, which were quite monumental given that Cindy and James "had often been unable to even attend visits [with the children] due to the presence of lice." The court noted that:
 All professionals present [at the May 3, 2000 hearing] expressed the fact that they have spent lengthy periods of time discussing with Mr. and Mrs. James the fact that if the children would have to be removed again from their custody, that [CSB] would be seeking Permanent Custody and termination of parental rights, due to the numerous times that these children have been in and out of agency care.
 Because the statutory two-year time limit ran on July 2, 2000, and Cindy and Franklin were living in a safe environment for the children away from Metzler, the trial court terminated the case on the 2nd day of July 2000. The court again stressed, however, that Metzler's home is not a suitable environment for the children and having Metzler babysit, even in the James' new apartment, "may not be the best for the children[.]" The court noted another serious concern was that Cindy and Franklin had been derelict in enrolling the children in the United Disability Services Preschool, and that they had failed to take Cody to a scheduled hearing exam. Once again the court warned Cindy and Franklin of the seriousness of the situation. Noting that Cindy was pregnant with Savanna, the court expressed its concerns for the family with the addition of another child:
 [T]he parents are expecting a new baby on July 22, 2000. There are also very serious concerns of the added care necessary for a new baby, and the stress that this will add to the family situation, will also raise the likelihood of possible further neglect of these two (2) children, Cody and Shyanne. The parents were forewarned that they need to follow all objectives of their case plan very carefully * * * so that it will not be necessary for [CSB] to file a new case regarding this family.
 Although the judge who made the determination in the present case is not the same who had presided over the previous matters, these facts were presented at the adjudicatory hearing and should have been considered, particularly because the problems are identical. The record clearly and convincingly shows that it was due to Cindy and Franklin James' faults or habits that the James children lacked adequate shelter to ensure their health and physical safety.
 III
The findings of the lower court that there was not clear and convincing evidence to show that Shyanne, Cody, and Savanna James are dependent children as defined by R.C. 2151.04(C), and neglected children as defined by R.C. 2151.03(A)(2), are against the manifest weight of the evidence. The sole assignment of error is sustained. The judgment of the trial court is reversed.
The Court finds that there were reasonable grounds for these appeals.
We order that a special mandate issue out of this Court, directing the, County of, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to.
Exceptions.
BATCHELDER, P.J., SLABY, J. CONCUR.