[Cite as *In re A.W.*, 2012-Ohio-2657.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

IN RE:                                          :

                                                :               Appellate Case No. 25039

       A.W.                                  :

                                                :               Trial Court Case No. JC 2009-7779

                                                :

                                                :               (Juvenile Appeal from
                                                :                Common Pleas Court)

                                                :

                                                :

        . . . . . . . . . . .

# O P I N I O N

Rendered on the 15th day of June, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. #0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

PAUL D. GILBERT, Atty. Reg. #0010129, 120 West Second Street, Suite 503, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} M.B. ("Father") appeals from the trial court's dependency adjudication regarding his minor child, A.W., and from its dispositional order awarding temporary custody to Montgomery County Children Services ("MCCS").

{¶ 2} Father advances three assignments of error on appeal. First, he contends the

trial court erred in finding that A.W. is a dependent child. Second, he claims the trial court erred in awarding MCCS temporary custody because the record does not support a finding of dependency. Third, he asserts that the award of temporary custody was erroneous even if A.W. is a dependent child.

{¶ 3}   The record reflects that MCCS filed a dependency complaint under R.C. 2151.04 in September 2009. The agency asserted that A.W. was dependent "due to the child's mental and behavioral issues." In relevant part, the complaint alleged:

> Child has cognitive delays and emotional and behavioral issues that prevent her from being able to remain in the family home. Child was charged with domestic violence against her mother but was found to be incompetent to stand trial. MCCS was granted interim temporary custody of the child due to the delinquency issues, but the charges [were] dismissed. Within one week of being placed in foster care, the child was admitted to Children's Hospital in Cincinnati for aggressive behaviors. She has been hospitalized for the last two weeks and is frequently restrained and placed in seclusion for her own safety and the safety of others. Mother and Father are unable to care for the child at home.

{¶ 4}   The matter proceeded to a December 2009 adjudicatory hearing before a magistrate. Michelle Williams, an MCCS caseworker, testified that she became involved with the family after A.W. was charged in juvenile court with domestic violence and resisting arrest. (Dec. 4, 2009, transcript at 9). Those charges stemmed from 11-year-old A.W. kicking E.W. ("Mother"), breaking Mother's rib, and fighting with police when they arrived. (*Id*. at 28). According to Williams, Mother and Father agreed that they could not control A.W.'s

behavior and that the child needed to be placed in MCCS's custody. (*Id*. at 9-10). Williams testified that Father characterized A.W. as being "out of control" and expressed fear about A.W. hurting a younger sibling. (*Id*. at 10). Williams further testified that "until things changed, [Father] was not willing to have [A.W.] return to his home." (*Id*. at 10-11). Williams stated that Mother expressed a desire to have A.W. placed in an institutional setting. (*Id*. at 11).

{¶ 5}    Williams also explained that Mother and Father had sought help from various agencies and had attempted to deal with A.W.'s behavioral problems since the child was about three years old. (*Id*. at 12). Despite these efforts, Father purportedly admitted to Williams that he was "unable" to handle A.W. (*Id*.) Williams also testified that A.W. had been diagnosed with mental-health disorders, including ADHD, bipolar, and oppositional-defiant disorder. (*Id*. at 13). Finally, Williams testified that A.W. had been given medications. (*Id*.). On cross-examination, she acknowledged that A.W.'s problems were behavioral in nature, were not related to issues in her home, and had continued to exist in foster care. (*Id*. at 17-18).

{¶ 6}    For his part, Father testified that he initially favored MCCS's intervention to help A.W. get better. (*Id*. at 20-24). At the time of the adjudicatory hearing, however, Father wanted her to return home. The magistrate sustained an objection when Father attempted to testify that he believed A.W. had gotten "better." (*Id*. at 25).

{¶ 7}    Mother then testified that she believed A.W. was "dependent" in the sense that the child "was going to need help for the rest of her life." (*Id*. at 30, 44). Mother also described the types of help that she previously had gotten for A.W. Among other things, A.W. twice had received care from a hospital psychiatric unit. (*Id*. at 32). Mother expressed frustration, however, at the lack of funding for A.W. to receive additional care. (*Id*. at 31-33). Mother

admitted that A.W. sometimes "gets aggressive" with a younger sibling. (*Id*. at 34). But she was not worried because the children were never unattended. (*Id*.). Finally, Mother testified that A.W. had been on "many different medications." (*Id*. at 35).

{¶ 8}    After hearing testimony from the foregoing witnesses, the magistrate issued a decision finding A.W. to be dependent.   The trial court later denied a motion to set aside the magistrate's decision and adopted the finding of dependency. This Court dismissed an appeal of the dependency finding for lack of an appealable order. The matter then proceeded to an October 2010 dispositional hearing before the same magistrate. After listening to additional testimony about A.W.'s condition, progress, and other issues, the magistrate granted MCCS temporary custody. Father filed objections to the magistrate's decision. While the objections were pending, he unsuccessfully pursued a petition for a writ of habeas corpus. The trial court overruled Father's objections and awarded MCCS temporary custody on February 3, 2012. This appeal followed.[1]

{¶ 9}    In his first two assignments of error, which are briefed and argued together, Father contends a finding of dependency cannot be based on the mental illness or disability of a child. (Appellant's brief at 7). He argues that "[f]rom the beginning of recorded case law the Courts of this State have insisted upon a showing of parental fault in order to find [d]ependency." (*Id*. at 8). In support of this proposition, he cites, inter alia, *In re Burrell*, 58 Ohio St.2d 37, 388 N.E.2d 738 (1979). He also relies on language from *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 22, stating "that abuse, neglect, or

---

[1] Parenthetically, we note the existence of evidence in the record indicating that Mother passed away after the trial court granted MCCS temporary custody. For that reason, she is not a party to this appeal.

dependency adjudications implicitly involve a determination of the unsuitability of the child's parents." Father argues that a finding of dependency cannot be made under R.C. 2151.04(C) absent evidence of "a nexus between the deficiencies found in the child's condition and environment and inappropriate behavior of the parents." (Appellant's brief at 9). He insists that the there is no evidence of inappropriate parental behavior in this case, much less evidence of a nexus between any inappropriate parental behavior and A.W.'s problems. Therefore, he reasons that the trial court erred in finding A.W. to be a dependent child.

{¶ 10} A "dependent child" includes one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship * * *." R.C. 2151.04(C). A trial court's dependency finding must be supported by clear and convincing evidence. *In re P.G.*, 2d Dist. Montgomery No. 22706, 2008-Ohio-4015, ¶ 11. This Court's review is limited to determining whether the record contains sufficient, credible evidence to support the trial court's decision. *Id.*

{¶ 11} The focus in a dependency proceeding is on the child's condition, not on parental fault or a lack thereof. *In re Riddle*, 79 Ohio St.3d 259, 263, 680 N.E.2d 1227 (1997) (recognizing that a dependency case focuses on the condition or environment of the child rather than parental fault); *State v. Frazier*, 2d Dist. Montgomery Nos. 15273, 15274, 1996 WL 517271, *3 (Sept. 13, 1996) ("Unlike a case involving neglect, fault on the part of a parent is not necessary to a finding of dependency. * * * In dependency cases, the focus is on the condition of the children, and not the fault of the parents."). This is not to say that a parent's conduct is never relevant in a dependency proceeding. A parent's problems and deficiencies certainly can affect a child's condition or environment and necessitate state intervention. *In re Lannom*, 2d Dist. Clark No. 96-CA-64, 1997 WL 761323, *5 (Dec. 12,

1997). But a finding of dependency does not *require* a showing of parental fault because fault is not an issue in a dependency proceeding. *See, e.g., In re Ament*, 142 Ohio App.3d 302, 307, 755 N.E.2d 448 (12th Dist.2001); *In re Riddle* at 263.

{¶ 12} The case law cited by Father fails to persuade us otherwise. Notwithstanding Father's argument, *In re Burrell*, *supra*, does not stand for the proposition that parental fault is required for a finding of dependency. In that case, the Ohio Supreme Court reasoned:

> The conduct of a parent is relevant under [R.C. 2151.04(C)] solely insofar as that parent's conduct forms a part of the environment of the child. As a part of the child's environment such conduct is only significant if it can be demonstrated to have an adverse impact upon the child sufficiently to warrant state intervention. That impact cannot be simply inferred in general, but must be specifically demonstrated in a clear and convincing manner.

*In re Burrell* at 39.

{¶ 13} The foregoing language merely reaffirms that parental conduct (or misconduct) generally is not relevant in a dependency proceeding. It may become relevant, however, to the extent that it adversely impacts the child's condition or environment. Notably absent from *In re Burrell* is any indication that parental misconduct, or fault, must exist for a dependency finding.

{¶ 14} We are equally unpersuaded by Father's reliance on the Ohio Supreme Court's observation in *In re C.R.* "that abuse, neglect, or dependency adjudications implicitly involve a determination of the unsuitability of the child's parents." *In re C.R.* at ¶ 22. Father errs in equating the term "unsuitability" with "fault." At least with respect to dependency actions parental "unsuitability" is broader than "fault." This must be so because the Ohio Supreme

Court has made clear that parental "fault" is not required for a finding of dependency. *In re Riddle* at 263. Therefore, Mother and Father may have been "unsuitable" legal custodians for A.W., given their inability to control her behavior, notwithstanding their lack of "fault" for her behavioral and mental problems. *See In re Myers*, 3d Dist. Seneca No. 13-06-48, 2007-Ohio-1631, ¶ 15-19.

{¶ 15} Having determined that inappropriate parental behavior, or "fault," is not required for a finding of dependency, we overrule Father's first and second assignments of error.

{¶ 16} In his third assignment of error, Father contends the trial court erred in awarding MCCS temporary custody of A.W. He argues that none of MCCS's actions have been helpful or beneficial to A.W. and that the agency's failure to return the child to him violates R.C. 2151.419.

{¶ 17} The statute governing a trial court's disposition of a dependent child authorizes committing the child to the temporary custody of a public children-services agency when such a disposition is in the child's best interest. *See* R.C. 2151.353(A)(2); *In re S.M., C.M., & D.M.*, 2d Dist. Montgomery No. 24539, 2011-Ohio-6710, ¶ 3. While an award of temporary custody to a children-services agency must be supported by the preponderance of the evidence, "a court has substantial discretion in weighing the considerations involved in making the determination regarding a child's best interest." *Id.* at ¶ 4.

{¶ 18} The record reflects that A.W. had been placed in a residential-treatment facility at the time of the dispositional hearing. (Oct. 29, 2010, transcript at 26). She was receiving frequent group and individual therapy as well as regular medication management.

(*Id*. at 80). She also was attending four hours of daily special-education classes. (*Id*. at 81). Although A.W. previously had made some progress in her behavior while at the facility, she had regressed at the time of the dispositional hearing. (*Id*. at 83-84). At that time, A.W.'s "aggression level" was high and the child expressed fear that she might have behavioral problems if she went home. (*Id*. at 90, 114).

{¶ 19} Although the goal for A.W. is reunification, clinical counselor Lisa Neeley testified that returning the child to her family would not yet be "healthy." (*Id*. at 92). This was so, according to Neeley, because A.W.'s frequent aggressive behavior posed a risk to a younger sibling. (*Id*. at 92, 133). Neeley later opined that sending A.W. home would not be a "wise choice" because the child was "very unstable." (*Id*. at 118). Finally, Neeley testified that A.W.'s behavior required staff to place her in "holds" several times a week. (*Id*. at 131). Correctly placing the child in a "hold" required two men to restrain her. (*Id*.). In Neeley's opinion, Mother and Father would have a difficult time safely placing A.W. in a hold. (*Id*. at 132).

{¶ 20} Another witness, caseworker Nell Oliver Elliott, reiterated that MCCS's goal for A.W. was reunification with her family. (*Id*. at 147). Elliott testified, however, that Mother and Father first needed to comply with a case plan and with agency recommendations to help them address A.W.'s behavior. (*Id*.). According to Elliott, Mother had expressed concerns about A.W. returning home, including concerns about a younger sibling's safety. (*Id*. at 149-150). In her own testimony, Mother stated that she wanted A.W. to come home but also wanted her to "get better" first. (*Id*. at 188, 203) The guardian ad litem also participated in the dispositional hearing and recommended that A.W. be placed in MCCS's temporary custody. (*Id*. at 211).

{¶ 21}   Having reviewed the record, we conclude that the trial court's award of temporary custody to MCCS is supported by the evidence and does not constitute an abuse of discretion. Although A.W. had made sporadic progress in the residential-treatment facility, the trial court reasonably could have found that the child's best-interest would be served by granting temporary custody to MCCS. The preponderance of the evidence indicates that A.W. posed a danger to others and that her parents were unable to control her behavior. Under such circumstances, we see no error in the trial court's dispositional order awarding MCCS temporary custody.

{¶ 22}   Father's reference to R.C. 2151.419 fails to persuade us otherwise. The statute provides, inter alia:

"[A]t any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home.

R.C. 2151.419(A)(1).

{¶ 23}   In recommending an award of temporary custody to MCCS, the magistrate specifically found that MCCS "has made reasonable efforts to prevent the removal of the child

from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return home * * *." (Doc. #33 at 1). The magistrate then identified what MCCS had done. (*Id.*).

**{¶ 24}** Father argues that MCCS failed to make "reasonable efforts" under R.C. 2151.419(A)(1) because, in his view, the child has obtained no benefit from the treatment she has received. (Appellant's brief at 12). Even if this assertion is true, the statute requires "reasonable efforts" not "positive results." We see no violation of R.C. 2151.419(A)(1) here. The third assignment of error is overruled.

**{¶ 25}** The judgment of the Montgomery County Common Pleas Court, Juvenile Division, is affirmed.     . . . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.

Copies mailed to:

Mathias H. Heck
Carley J. Ingram
Paul D. Gilbert
Hon. Nick Kuntz