[Cite as *In re T.W.*, 2017-Ohio-5759.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| IN RE: | : | Appellate Case No. 27311 |
| T.W. | : | Trial Court Case No. JC-2015-7297 |
|  | : | (Juvenile Appeal from |
|  | : | Common Pleas Court) |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of July, 2017.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ALICE B. PETERS, Atty. Reg. No. 0093945, Montgomery County Children's Services, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee, Montgomery County Children Services Board

BEN M. SWIFT, Atty. Reg. No. 0065745, P.O. Box 49637, Dayton, Ohio 45449
      Attorney for Defendant-Appellant, Mother

. . . . . . . . . . . .

HALL, P.J.

{¶ 1} Mother appeals from the juvenile court's dispositional order overruling her motion for custody of her minor son, whom we will refer to as "Terry,"[1] and extending the temporary custody of Montgomery County Children Services (MCCS). Finding no error, we affirm.

## I. Background

{¶ 2} Terry was born in July 2010 and is his parents' only biological child. In September 2015, two-year-old "Steven" and his brother, three-year-old "Tobias," were placed in Terry and his parents' home through a foster-to-adopt program. Two months later, in November, MCCS received a report that Mother's fourteen-year-old brother "Kevin," who was living in the home, had been physically abused by Father. An examination at Dayton Childrens Hospital revealed that Kevin had scarring consistent with physical abuse. When asked about Kevin's claims, Mother said that he was making it up.

{¶ 3} Two days after receiving the report about Kevin, MCCS learned that Steven had died while in the care of Mother and Father. Significant, untreated burns were found on Steven's body. Mother and Father admitted that they had not sought medical treatment for the burns, and they could not offer a plausible explanation as to how Steven had been burned. Tobias was also examined at the hospital and a healing fracture in his foot was found. Mother and Father admitted that they had not sought medical treatment for Tobias either, even though Mother had seen him limping. Like his foster brothers, Terry was examined at the hospital too. No injuries were found on him.

---

[1] We use pseudonyms throughout this opinion to protect the identity of minor children.

**{¶ 4}** Concerned for Terry's safety and emotional well-being, MCCS filed a complaint on November 25 alleging that Terry was a dependent child and requesting temporary custody of him. At the same time, MCCS filed a motion for ex parte interim temporary custody. The same day, the juvenile court signed an order giving MCCS interim temporary custody of Terry. A hearing was held a few days later at which both Mother and Father agreed that Terry would remain in the interim temporary custody of MCCS. The court granted Mother and Father supervised visitation with Terry. But in mid-December, MCCS asked the court to suspend visitation because of the stress it was causing Terry. At an adjudicatory hearing in January 2016, Mother and Father agreed to a finding of dependency and stipulated to the facts in the complaint. The court adjudicated Terry a dependent child and granted temporary custody to MCCS. The court also suspended Mother and Father's visitation.

**{¶ 5}** In June 2016, Father filed a motion for custody of Terry, or in the alternative, for reasonable parenting time. A few days later, Mother too filed a motion for custody, or in the alternative, for reasonable parenting time. In August, Father was indicted in connection with Steven's death on numerous felonies, which include child endangering, felonious assault, reckless homicide, involuntary manslaughter, and murder. At the end of August, MCCS filed a motion to extend its temporary custody of Terry. A hearing was held on the motions in September. At the start of the hearing, Father withdrew his motion for custody. On September 30, the juvenile court granted MCCS an extension of temporary custody, overruling Mother's custody motion.[2]

---

[2] On October 3, 2016, the juvenile court entered an amended order "to correct when temporary custody expires and reset the Annual Review/Permanency Planning hearing date."

{¶ 6} Mother appealed.

## II. Analysis

{¶ 7} Mother assigns three errors to the juvenile court's custody order.

### A. *Denying Mother custody*

{¶ 8} The first assignment of error argues that the custody decision is against the manifest weight of the evidence.

{¶ 9} A court may commit a dependent child to the temporary custody of a public children services agency if the court finds that this disposition is in the child's best interest. *In re A.W.*, 2d Dist. Montgomery No. 25039, 2012-Ohio-2657, ¶ 17, citing R.C. 2151.353(A)(2) and *In re S.M.*, 2d Dist. Montgomery No. 24539, 2011-Ohio-6710, ¶ 3. The court's temporary custody decision "must be supported by a preponderance of the evidence." *S.M.* at ¶ 4. The decision will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence supporting the decision. *See In re A.U.*, 2d Dist. Montgomery No. 22264, 2008-Ohio-186, ¶ 15.

{¶ 10} "While an award of temporary custody to a children-services agency must be supported by the preponderance of the evidence, 'a court has substantial discretion in weighing the considerations involved in making the determination regarding a child's best interest.' " *A.W.* at ¶ 17, quoting *S.M.* at ¶ 4. A court determines a child's best interest using the relevant factors in R.C. 3109.04(F)(1). *In re D.S.*, 2d Dist. Clark No. 2013 CA 51, 2014-Ohio-2444, ¶ 9. These factors include the parents' wishes; the child's wishes, if the court has interviewed the child; the child's interaction with parents, siblings, and others who may significantly affect the child's best interests; adjustment of the child to home, school, and community; the mental and physical health of all those involved; and whether

either parent has been convicted of or pleaded guilty to a criminal offense that resulted in a child being an abused or neglected child, or whether either parent has been convicted of or pleaded guilty to an offense against a victim who was a member of the household that is the subject of the current proceeding and caused physical harm to the victim, or whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child.

{¶ 11} The juvenile court here concluded that Terry's best interest would be served by extending MCCS's temporary custody. The court found that the concern that prompted MCCS to remove Terry from his home—domestic violence—remains a concern. The court found that Mother has not met her case plan objectives. The court noted that there are allegations and pending criminal investigations concerning the abuse of three children who were in Mother's care. Steven, her two-year-old foster child, died having untreated burns, and Tobias, her three-year-old foster child, had an untreated broken foot. Also, Kevin, Mother's fourteen-year-old brother, alleges that Father physically abused him and has scarring on his body consistent with this allegation. The court found that when Terry entered foster care, Mother and Father were allowed to visit him but that after two visits their visitation rights were terminated because Terry experienced such anxiety after the visits that he began having nightmares and wetting his bed. The court found that Mother cannot adequately care for Terry and that Terry is happy in his foster home. Living in Mother's home, concluded the juvenile court, is contrary to Terry's welfare and best interest.

{¶ 12} The court's conclusions and findings are amply supported by the evidence. The guardian ad litem states in his report that Terry told him that he "would like to live

where he is now," in his foster home, and that he (Terry) would not like to live anywhere else. Terry's therapist, pediatric psychologist Dr. Brenda Miceli, testified that Terry told her the same thing. Dr. Miceli and a MCCS caseworker testified that Terry does not talk about missing his parents. And they testified about the anxiety, nightmares, and bedwetting that Terry experienced after visits with his parents. According to the caseworker, when visits were suspended, Terry told her that this was "a good thing." (Tr. 103). Also, she said that his bedwetting and nightmares improved. When Terry had no contact with his parents, said the caseworker, he seemed to excel but that when contact resumed he regressed—the bedwetting and nightmares would start again. Dr. Miceli confirmed that there was a correlation between the contact and the bedwetting and nightmares.

{¶ 13} Mother was referred to psychologist Dr. Richard Bromberg for a parenting and psychological evaluation, which was completed in May 2016. Dr. Bromberg principally diagnosed Mother with an adjustment disorder, with anxiety and depression, and a personality disorder, with antisocial, avoidant, narcissistic, and schizoid features. He provisionally diagnosed her with major depression, a mood disorder, and an acute stress disorder. And he questioned whether there was substance abuse. Dr. Bromberg recommended that Mother have therapy, complete an anger-management course, and complete parenting-skills training. At the hearing, Dr. Bromberg testified about his evaluation. He expressed concern about Mother's mental health and about how it would affect her ability to care for Terry. And he said that she needed to get treatment soon because her mental health was interfering with her ability to parent effectively. Dr. Bromberg concluded that Mother does not have the knowledge, skills, or ability to parent

Terry and that Terry would be at risk if placed back in her care. And he said that the risk is great enough that he could not recommend visitation.

{¶ 14} Mother has not followed any of Dr. Bromberg's recommendations and has not obtained any mental-health treatment. Mother testified that she had never received mental-health treatment before and that she disagreed with Dr. Bromberg's conclusions. Mother's caseworker testified that Mother told her that she would not follow Dr. Bromberg's recommendations.

{¶ 15} The record contains evidence that Mother bears at least some responsibility for the abuse that occurred in the home. Father has been indicted for multiple felonies related to Steven's death. And at the time of the hearing, there was an ongoing criminal investigation into whether Mother bears any criminal responsibility.[3]

{¶ 16} The juvenile court's determination that Terry's best interest lays in extending MCCS's temporary custody is supported by a preponderance of the competent, credible evidence and is not an abuse of discretion.

{¶ 17} The first assignment of error is overruled.

B. *Visiting with Mother*

{¶ 18} The second assignment of error argues that the juvenile court erred by not allowing Mother to visit with Terry.

{¶ 19} As MCCS points out, the custody order does permit visitation. The order states that Mother "is to have supervised parenting time with the child when it is recommended and approved by the child's therapist after the child and mother have had

---

[3] After the trial, on November 1, 2016, Mother was indicted on a count of endangering children (parent-serious harm), a third-degree felony.

some joint meetings with the child's therapist" and further states that Mother "shall have supervised parenting time at MCJFS-CSD after approval by the therapist or other adult as recommended by the therapist."

{¶ 20} At the end of the hearing, the juvenile court said that if Dr. Miceli was willing to conduct joint counseling, Mother should start meeting with her so that they can build up to including Terry in the sessions too. So the plan was for Mother to have counseling with Dr. Miceli and, once Dr. Miceli thought that Mother and Terry were ready, to include Terry.[4] The court has not barred Mother from contact with her son but simply imposed conditions precedent to contact. In light of the testimony about the effect that visits had on Terry before, we think that the conditions are reasonable. We find no abuse of discretion.

{¶ 21} The second assignment of error is overruled.

C. *Placing Terry with his aunt*

{¶ 22} The third assignment of error argues that the juvenile court erred by not placing Terry with N.J., his aunt.

{¶ 23} N.J. did not file a motion for custody nor did Mother, in her motion for custody, ask that N.J. be given custody as an alternative. But N.J. testified at the hearing that she would be willing to take Terry. The juvenile court found that N.J. was "willing and able to care for the child" and that "[a] home study has been approved" for her. But N.J. lives in Evansville, Indiana, which is a four-hour drive from Dayton. For this reason, the

---

[4] Mother has since been convicted of endangering children and sentenced to three years in prison. Her stated prison term expires in April 2020. Ohio Department of Rehabilitation & Correction, Offender Search, https://appgateway.drc.ohio.gov/offendersearch/ (accessed July 3, 2017).

court found that it was not in Terry's best interest to be placed with her: "[D]ue to the relative's geographical distance from Montgomery County, Ohio, the Court finds that it is not in the child's best interest to be placed in the care of the relative. The child is engaged in therapy and while the relative states that she would provide transportation for the child from her home to therapy in Montgomery County, the Court finds that the excessive travel time this would require is not in the best interest of the young child."

{¶ 24} Particularly in light of the evidence that Terry is happy and doing well in his current foster home, the court's decision not to place Terry with N.J. is reasonable.

{¶ 25} The third assignment of error is overruled.

### III. Conclusion

{¶ 26} We have overruled all the assignments of error presented. Therefore the juvenile court's temporary-custody order is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies mailed to:

Mathias H. Heck
Alice B. Peters
Ben M. Swift
Father
Roger Neal
Hon. Anthony Capizzi